659 So.2d 866 (1995)
Ronald Glen JOHNSON and Sara Ballard Johnson
v.
PREFERRED RISK AUTOMOBILE INSURANCE COMPANY.
No. 91-CA-00785-SCT.
Supreme Court of Mississippi.
August 3, 1995.
*867 Jim Waide, Tupelo, for appellant.
Herman M. Hollensed, Jr., Bryan Nelson Randolph & Weathers, Hattiesburg, for appellee.
En Banc.
JAMES L. ROBERTS, Justice, for the Court:

I.

INTRODUCTION
Ron and Dee Johnson were injured in an accident with an uninsured motorist on June 10, 1988. At the time of the accident, Ron was temporarily staying with his parents in Columbus, Mississippi, and Dee was temporarily staying with her parents in Plantersville, Mississippi.
Both sets of parents had insurance policies with the Preferred Risk Automobile Insurance Company, including uninsured motorist (UM) coverage. Ron and Dee sought UM benefits under their parents' policies, claiming that they were "residents" of their parents' homes entitled to coverage. The UM coverage in the policies extended to "relatives" of the insured; "relative" was defined as "a person related to you by blood, marriage or adoption, who is a resident of your household." Preferred denied coverage on the grounds that neither Ron nor Dee were "residents" of their parents' homes within the policy terms. Ron and Dee sued Preferred to obtain the UM benefits, and summary judgment was granted to Preferred. The Johnsons appeal, citing the following errors:
I. WHETHER THERE ARE ISSUES OF MATERIAL FACT AS TO WHETHER PLAINTIFFS WERE "RESIDENTS" OF THEIR PARENTS' HOUSEHOLDS.
II. WHETHER THE CIRCUIT COURT ERRED IN NARROWLY DEFINING THE TERM "RESIDENT" WHEN ONLY "RESIDENTS" ARE COVERED UNDER AN UNINSURED MOTORIST POLICY.
III. WHETHER THE CIRCUIT COURT ERRED IN REFUSING *868 TO APPLY THE RULE REQUIRING AMBIGUITY IN INSURANCE POLICIES BE RESOLVED IN FAVOR OF COVERAGE.
Today we expressly overrule and vacate Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (Miss. 1964). We find that Ron and Dee were residents of their parents' households, and eligible to collect UM benefits under the Preferred policies issued to their parents. Accordingly, we reverse the summary judgment and remand for proceedings consistent with this opinion.

II.

FACTS AND PROCEDURAL HISTORY
On June 10, 1988, Ronald Glen Johnson ("Ron") and his wife Sara Ballard Johnson ("Dee") were injured in an accident in Lee County, Mississippi, with an uninsured motorist. The Johnson's pickup truck was uninsured.[1]
At the time of the accident, Ron was temporarily living with his parents in Columbus, Mississippi, and Dee was temporarily living with her parents in Plantersville, Mississippi. Happily, their separation was not caused by marital discord. Rather, the Johnsons, married in 1986, had been living in Knoxville, Tennessee, while Ron attended graduate school. Ron graduated on June 1, 1988, and the couple planned to move to Little Rock, Arkansas, where Ron had secured a job with Proctor and Gamble. Ron was to begin work on June 24, 1988, and the couple intended to move to Little Rock on June 15, 1988. Ron and Dee stayed with Ron's parents from June 1 through June 3, 1988; Dee then went to her parent's home from June 3 to June 10, 1988. Each spouse attended to personal affairs.
At the time of the accident, both sets of parents had vehicles insured by the Preferred Risk Automobile Insurance Company ("Preferred"). The (Charles) Johnsons had one policy providing UM coverage of $10,000 per person, $20,000 per accident. The UM coverage under this policy extended to the insured, defined as "you or any `family member.'" "Family member" was defined elsewhere in the policy as "a person related to you by blood, marriage or adoption, who is a resident of your household."
The Ballards had two policies, each providing UM coverage of $10,000 per person, $20,000 per accident. In policy # 3533-335, the terms "insured" and "family member" were defined as above. In policy # B3640-845, the UM portion defined "persons insured" as "the named insured and any designated insured and while residents of the same household, the spouse and relatives of either."
By letter dated August 17, 1988, the Johnsons' attorney asserted that on the date of the accident, Ron and Dee were residing with their respective parents, and therefore eligible to receive payment under the UM portions of their parents' insurance policies. Ron's hospital and medical expenses were alleged to total $13,405.73, and Dee's to total $19,900.49, with further expenses anticipated. Ron requested payment of $31,000 for his medical expenses, plus $1,312.50 in lost wages; Dee requested payment of $21,000.
By letter dated December 13, 1988, Preferred's attorney informed the Johnsons' attorney that Preferred was denying payment on the grounds that neither Ron nor Dee were residents of their parent's home at the time of the accident, and were therefore not "family members" entitled to coverage under the policies.
On October 20, 1989, Ron and Dee filed suit against Preferred in the Lee County Circuit Court, seeking a declaratory judgment that they were covered by their parents' policies, and to obtain the UM coverage under each policy.
Ron and Dee were deposed in October of 1988. The following relevant facts and quotations are gleaned from their depositions:
Ron stated that he had accepted the job with Proctor & Gamble on January 7, 1988, as a sales representative in the Little Rock area. On a house hunting trip to Arkansas in late May, he had looked at a number of homes, including the house he and Dee eventually rented, at 608 North Tyler Street. At *869 that time, Ron had discussed renting the house with the owner on a month-to-month basis, but had not "secured" the house, nor did he sign the lease until the first week of August, which was subsequent to the accident. In late May, Ron was told that his starting date would be June 24, 1988, and the couple planned to move to Little Rock around June 15, 1988.
After Ron's June 1 graduation in Knoxville, Ron and Dee returned to Mississippi to be with their families, to retrieve "a lot of stuff" they had there, and "to take care of things" that needed doing. The couple brought a U-Haul of personal belongings from Knoxville to Mississippi. Dee stated that she went home "because everything that I owned was there." In addition, their wedding gifts were at the Ballards, and Dee wanted to pack those for the move to Arkansas; Ron had "guns and bedroom stuff" at his parents' house in Columbus he needed to pack as well. In addition, Dee's sister was to marry on June 11, 1988, and Dee was in the wedding.
Ron agreed that he sent a $50.00 check to Southwestern Bell as a deposit for phone service, providing the 608 North Tyler Street address in Little Rock to the company. The check was stamped paid on June 10, 1988. Dee agreed that she and Ron had talked about living in that house, and that as of June 10, 1988, that is where they felt they would be living. Ron stated that at the time he left Knoxville, he was receiving some mail at the "anticipated address in Little Rock," some mail in Knoxville, and some mail at his parents' home in Columbus. Ron stated that he had moved to Little Rock on August 17, 1988; Dee stated that she and Ron actually moved into the house on September 2, 1988.
Dee stated that on the day of the accident, she had a Tennessee driver's license, obtained in September or October of 1986, and a Tennessee plate on her car. Currently, she had an Arkansas tag; she had not had a Mississippi driver's license or tag during 1988. Ron stated that as of the date of the accident, he had a Tennessee driver's license, and now had an Arkansas license. The accident report gives the Johnson's Knoxville address.
Dee stated that she was registered to vote in Lee County, Mississippi, but had not voted in any Mississippi election since January 1, 1988, and had not voted by absentee ballot during the last two years. She could not remember voting in any Mississippi elections, because she had been "gone." Ron stated that he was registered to vote in Lowndes County; the last time he had voted in any election was 1984. Dee further stated that she and Ron intended to leave their registration in Mississippi, and not register to vote in Arkansas.
Ron stated that upon his move to his parents house on June 1, 1988, his intention was "to reside there for about three weeks" before moving to Arkansas.
Preferred filed a motion for summary judgment on April 12, 1990. On June 4, 1991, the trial court granted summary judgment, holding that Ron was not a resident of his parents' household; Dee was not a resident of her parents' household; and that neither was an "insured" under the meaning of the Preferred policies. The suit was dismissed with prejudice and all costs were assessed to the Johnsons. The Johnsons appealed the grant of summary judgment on July 31, 1991.

III.

DISCUSSION OF ISSUES

I. WHETHER THERE ARE ISSUES OF MATERIAL FACT AS TO WHETHER PLAINTIFFS WERE "RESIDENTS" OF THEIR PARENTS' HOUSEHOLDS.

II. WHETHER THE CIRCUIT COURT ERRED IN NARROWLY DEFINING THE TERM "RESIDENT" WHEN ONLY "RESIDENTS" ARE COVERED UNDER AN UNINSURED MOTORIST POLICY.

III. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO APPLY THE RULE REQUIRING AMBIGUITY IN INSURANCE POLICIES BE RESOLVED IN FAVOR OF COVERAGE.
*870 While the Johnsons divide their argument into three assignments of error, this appeal concerns a single question: were Ron and Dee "residents" of their parents' households at the time of the accident, under the UM provisions of the Preferred insurance policies?
The Johnsons argue that they were residents of their parents' homes at the time of the accident, "liv(ing) there as family members, sharing in the life of the house and family." The Johnsons contend that the trial judge applied an improperly narrow definition of "resident" to their claims; that Mississippi's public policy favors liberal construction of UM insurance provisions; and that any ambiguity in the policy must be resolved in favor of the insured. Finally, the Johnsons argue that, at the very least, there were issues of material fact as to whether they were covered, rendering summary judgment improper. The Johnsons point to those facts in the record indicating that they were no longer Tennessee residents, but not yet Arkansas residents; that is, that "there is no other place where either one of them could have been residents."
Preferred argues that the trial judge properly granted summary judgment, because the question of UM coverage was one of law, not of fact. Preferred contends that the Johnsons' stays with their respective parents were "temporary sojourns" or "transient visits," and therefore that they were not "residents" under the insurance policies or this state's law. Preferred argues that the broad construction of the term "resident" urged by the Johnsons would mandate coverage for any relative of a named insured who "stops over for the night," and that such result was unintended by the legislature. Finally, Preferred argues that it was entitled to rely on this Court's definition of "resident" in Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964), which excluded relatives making "transient visits" from policy coverage. However, Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964), is hereby overruled.

LAW

Summary Judgment
Under M.R.C.P. 56, a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63-64 (Miss. 1988). In the context of insurance cases, summary judgment is improper where there exists a material question of fact with regard to coverage. Wright v. Allstate Indem. Co., 618 So.2d 1296, 1300 (Miss. 1993). In Wright, this Court reversed a grant of summary judgment to an insurance company, holding that questions of fact existed, precluding such judgment. The disputed issues of fact concerned whether or not Wright had told Allstate who would be living in the home for which Wright had purchased insurance. Wright swore he had told the Allstate agent that certain persons would be living in the house; the agent swore Wright had not told him. The Court found this to be "a classic case requiring a jury determination of disputed issues of fact." Id.[2]
The question raised in the case at bar, however, does not concern a disputed issue of fact in the sense of Wright, above. That is, there is no disagreement as to how long the Johnsons stayed with their parents, or whether they planned to remain there indefinitely. There is simply disagreement as to whether family members staying temporarily with an insured are covered by UM policies extending to "relatives," who are defined as residing in the same household as the insured. That is, no question of fact existed of the sort to preclude summary judgment. Rather, a question of law existed, which the trial judge ruled on either correctly or incorrectly.
That the case at bar concerns a question of law, not fact, is supported by Gunn v. Principal *871 Casualty, 605 So.2d 741 (Miss. 1992). In Gunn, we held that where a plaintiff's parents and sister did not reside with him, they were not covered by his UM insurance, which extended to "relatives," defined as "person(s) living in your home and related to you by blood, marriage or adoption." The trial court held that the parents and sister were not "relatives" within the meaning of the policy, and granted summary judgment for the insurer. We affirmed the trial court's holding "as a matter of law that the policy definition of the term "relatives" controls excluding coverage for relatives who do not live in the home of the name insured." Gunn, 605 So.2d at 742 (emphasis added). We stated:
Because Philip Gunn's father, mother and sister were not "resident of the same household" with Philip, they are not insureds within the meaning of the Act. Because nothing in the policy at issue expands the word "insured" beyond the statutory definition, that definition controls and leaves us no alternative but to deny Gunn's appeal.
Gunn, 605 So.2d at 744.
In sum, the issue presented by this case is one of law, not of fact.[3] We now proceed to the applicable law.

UM Law
To recover UM benefits provided by an insurance policy, a claimant must first prove that he or she is an "insured" under either the insurance policy and/or the UM statute. State Farm Mut. Auto. Ins. Co. v. Davis, 613 So.2d 1179, 1179 (Miss. 1992); Gillespie v. Southern Farm Casualty Ins. Co., 343 So.2d 467, 471 (Miss. 1977). Our UM statute, Miss. Code Ann. (1972) § 83-11-101 et seq. (Supp. 1993), provides the following definition for the term "insured":
As used in this article:
(b) The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either. .. .
Miss. Code Ann. (1972) § 83-11-103 (Supp. 1993).[4]
The UM statute and insurance policy are read together in determining whether an individual is an "insured" entitled to coverage:
The question (who is a "relative") calls for a reading of policy language, but, as all know by now, the meaning we may find is substantially affected by statute  our Uninsured Motorist Act. Miss. Code Ann. § 83-11-101 et seq. (Rev. 1991). By law, a UM insurer may not contract for coverage less than that statutorily required. On the other hand, we have repeatedly recognized that the insurer may provide broader coverage than required by the Act. In the end, we integrate the statute into the policy ... and give the legal text so assimilated the most coherent meaning its words may bear.
"Insured" and its component concept, "relative," have no natural definition in uninsured motorist law. Meaning is a function of contract augmented and informed by statute... .
Gunn v. Principal Cas. Ins. Co., 605 So.2d 741, 742-43 (Miss. 1992) (citations omitted).
Insurance contracts are construed strictly against the insurer and in favor of the policyholder. Mutual Ben. Health & Acc. Assn. v. Blaylock, 163 Miss. 567, 573, 143 So. 406 (1932). In particular, we have held that the language of the Mississippi UM Act "must be construed liberally to provide *872 coverage and strictly to avoid or preclude exceptions or exemptions from coverage." Aetna Cas. And Sur. Co. v. Williams, 623 So.2d 1005, 1008 (Miss. 1993), citing Harris v. Magee, 573 So.2d 646 (Miss. 1990); accord Cossitt v. Federated Guaranty Mutual Ins. Co., 541 So.2d 436 (Miss. 1989); Wickline v. United States Fidelity & Guarantee Co., 530 So.2d 708 (Miss. 1988).
This case turns on the interpretation of the word "resident" as it appears in the Preferred policies and under the UM statute. Where a family member is not a resident of the same household as the insured, UM coverage will be denied. Gunn v. Principal Cas. Ins. Co., 605 So.2d 741, 744 (Miss. 1992).

Who is a "Resident"?
"Resident" has no technical or fixed meaning; the term is "flexible, elastic, slippery, and somewhat ambiguous." 77 C.J.S. Resident at 305 (1952). The term "has an evasive way about it, with as many colors as Joseph's coat." Weible v. United States, 244 F.2d 158, 163 (9th Cir.1957), cited in Government Emp. Ins. Co. v. Dennis, 645 P.2d 672, 674 (Utah 1982).
The two concepts most often discussed in defining "resident" are 1) presence; and 2) an intent to remain for some time. However, there is no fixed formula for determining how much of any factor (presence, intent, or time) is required:
It has been said that the word "resident" is generally understood to mean one having more than a mere physical presence, and that the transient visit of a person for a time to a place does not make him a resident while there. It has also been said that the term imports a fixed abode for the time being, as contradistinguished from a place of temporary abode, and that in order to entitle one to the character of a resident there must be a settled fixed abode, and an intention to remain permanently, or at least for some time, for business or other purposes. On the other hand, it has been stated that living in a particular locality is sufficient for becoming a resident of it, and that the term "resident" may be used in the strict primary sense of one actually living in a place for a time, irrespective of domicile, and that it may refer to a temporary sojourner, as well as to one possessing a legal domicile.
77 C.J.S. Resident at 306 (citations omitted).
Construction of the term "resident" depends on the context, subject matter, and purpose designed to be accomplished by its use. 77 C.J.S. at 306. The question of who is a "resident" is, of course, not new to this Court. In the case primarily relied on by Preferred, Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964), we held that where a daughter and her husband (the Stogners) were temporarily staying in the home of her father (Arinder) while awaiting the completion of their new house and the birth of their child, the daughter was not a "resident" of the father's "household" under the terms of his auto liability insurance. The father's policy excluded from coverage any "non-owned auto registered in the name of the named insured or a relative"; "relative" was defined in the policy as "a relative of the named insured who is a resident of the same household." An auto registered to the Stogners was involved in an accident which killed a child (Goens); Arinder's insurer denied liability on the grounds that the Stogners were residents of the Arinder home, and therefore their auto was a "non-owned auto registered in the name of a relative" excluded from coverage. The trial court found for the insurance company,[5] but we reversed, finding that the Stogners were not members of the Arinder household, and therefore that the Stogner vehicle was not excluded from coverage. We commented on the term "resident":
The word "resident" means one having more than physical presence. The transient visit of a person for a time to a place does not make him or her a resident while there. The word "resident" imports a fixed abode for the time being, as distinguished from a place of temporary abode or a temporary sojourn. 77 C.J.S., pp. 305-307. In the instant case the Stogners *873 were building a home into which they had already moved part of their furniture, and were simply visiting or sojourning for the time being in the Arinder house, until Mrs. Stogner could have a baby and their house was completed. Hence she was not a resident of the Arinder household within the meaning of exclusion clause (1)(b)... .
We are of the opinion that the Stogners' stay in the Arinder home was no more than a visit or sojourning for the time being until Mrs. Stogner could have her baby and until their house was completed. This was of course temporary, and the proof shows that they did move into the home when these two events had taken place.
Goens v. Arinder, 248 Miss. at 811, 822, 161 So.2d at 516.
We noted that the Stogners were building a new home a short distance from the Arinder house; they had set up a bed in the Arinder home so that Mr. Stogner could finish the house, and Mrs. Stogner could be assisted by her family. The Stogners had moved their washing machine and refrigerator into the Arinder home, and moved a stove, dinette, bed and clothing to the new home. They paid their own expenses, cooked their own meals, and frequently visited the new home. Stating that "such conduct certainly shows there was no permanency in the arrangement," the Court held that as a matter of law, the Stogners were not members of Arinder's household, and therefore that the Stogner's car was covered by the insurance policy. Goens v. Arinder, 248 Miss. at 821-22, 161 So.2d at 515. However, Goens v. Arinder is overruled today.
Recently, we gave a broad construction to the term "resident" to find that an insured's college-age son was a member of his father's household, and therefore covered by his father's UM policy, despite the fact that the son lived with his mother. We cited public policy as the basis for such broad construction:
Our law ... embodies a mandate that the term "resident" be construed broadly to include Williams' son as an insured under the father's uninsured motorist coverage. The term "resident" appears in both the policy and the statute by which it is governed, and we must read both provisions broadly as a matter of public policy.
Aetna Cas. And Sur. Co. v. Williams, 623 So.2d 1005, 1009 (Miss. 1993). We noted that our UM statute uses the word "residence" rather than the narrower term "domicile" in defining who is an "insured." Distinguishing the two terms, we stated:
Apparently, Aetna desires that we equate the term "residence" with the term "domicile." The law is clear that a person can have but one domicile. Once established, a person's domicile remains stationary absent a clear indication of intent to abandon the existing domicile and to establish another. However, one may still have other residences.
Residence is an entirely different and more flexible concept. The limitations applicable to one's domicile do not apply to one's residence. For instance, a person may have multiple residences simultaneously. Further, a dwelling place need not be fixed and permanent in order to qualify as a residence. Even a temporary and transient habitation can qualify... .
Aetna Cas. And Sur. Co. v. Williams, 623 So.2d 1005, 1009-10 (Miss. 1993) (citations omitted).
While holding as a matter of law that a minor child is a resident of both parents' households, we nevertheless engaged in a discussion of the facts to support our (and the trial court's) conclusion that the son was in fact a resident of his father's home. We stated:
It has been held that "the term `residence' imports merely having abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present." In re Brown, 505 N.Y.S.2d 334, 132 Misc.2d 811 (N.Y.Sur. 1986). Whether a person "resides" at a particular location is a practical question which turns on the degree of one's attachment to a particular place of abode. In the instant case, Junior's attachment to his father's household was considerable. He had a room. He had clothing and personal possessions there. *874 He stayed there at least occasionally. He depended, in part, on his father to provide transportation and money. His father carried him on a hospitalization insurance policy. Moreover, he was still his father's son and a part of his father's family... .
Aetna Cas. And Sur. Co. v. Williams, 623 So.2d at 1010.
Our rationale for a broad construction of the term "resident" was based on a perception that the legislature intended to provide maximum protection for minor children, who, we noted, are unable to establish their own domicile.[6]
We have not recently addressed the question presented by this case: whether adult children temporarily staying with their parents may be considered "residents" of the parents' households for purposes of UM coverage. Other courts have considered cases in which adult children seeking UM benefits under their parents' policies claim to be residents of their parents' households, although their visits were brief and/or impermanent. See David B. Harrison, Annotation, Who is "Member" or "Resident" of Same "Family" or "Household," Within No-Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy, 96 A.L.R.3rd 804 (1979).
In general, college students are considered residents of their parents' homes, although they reside elsewhere for most of the year, and visit their parents only occasionally. See e.g., Morgan v. Illinois Farmers Ins. Co., 392 N.W.2d 37 (Minn.App. 1986); Manuel v. American Employers Ins. Co., 228 So.2d 321 (La. App. 1969). Courts generally reason that college students leave possessions at their parents' home, return there on vacations, maintain their parents home as their "permanent address," while changing their temporary school addresses, and continue to regard their parents' homes as their own.
Sometimes adult children are found to be residents of their parents' households for purposes of UM coverage. For example, in Workman v. Detroit Auto Inter-Insurance Exchange, 404 Mich. 477, 274 N.W.2d 373 (1979), an insured's daughter-in-law, who had been living with her husband and child in a travel trailer on the insured's property, was held a member of the insured's household at the time of an accident, although several days prior to the accident she and her family had gone to her mother's residence for a visit. The court set out several factors to consider in determining whether a person is a "resident" of an insured's household, including: 1) the subjective or declared intent of the person remaining, either permanently or for an indefinite or unlimited period, in the place he contends is his "household;" 2) the formality or informality of the relationship between such person and the members of the household; and 3) whether the person alleging his residence to be a particular household has another place of lodging. These factors provide a reasonable framework for answering the question presented by the Johnsons: whether they were residents of their respective parents' households at the time of their accident for purposes of collecting UM benefits under their parents' Preferred insurance policies.
However, let us not forget one of the preliminary threshold and most important considerations we must be cognizant of before reaching the necessity of balancing residency factors when determining whether someone is a resident. That consideration is that one may have more than one `residence' making that person a `resident' of more than one locale. As previously discussed in Aetna Cas. And Sur. Co. v. Williams, 623 So.2d 1005, 1009, "a person may have multiple residences simultaneously." Id.; In re Estate of Burshiem, 483 N.W.2d 175 (N.D. 1992); In re Marriage of Tucker, 226 Cal. App.3d 1249, 277 Cal. Rptr. 403 (Cal. App.Ct. 1991); Laufer v. Hauge, 140 A.D.2d 671, 528 N.Y.S.2d 878 (N.Y. App. Div. 1988); Mutual Service Casualty Insurance Co. v. Olson, 402 N.W.2d 621 (Minn. Ct. App. 1987); Davis ex rel Davis v. Maryland Casualty Co., 76 N.C. App. 102, *875 331 S.E.2d 744 (N.C. Ct. App. 1985); Gowins v. Gowins, 466 So.2d 32 (La. 1985). Also, "a dwelling place need not be fixed and permanent in order to qualify as a residence." Aetna Cas. And Sur. Co. v. Williams, 623 So.2d 1005, 1010. "Even a temporary and transient habitation can qualify." Williams at 1010. In re Brown, 132 Misc.2d 811, 505 N.Y.S.2d 334 (N.Y.Sur. 1986).
Applying these factors to the Johnsons' case, it may first be noted that Ron and Dee intended to stay with their respective parents until such time as they could move despite the fact that they had a plan and an obligation to be residing elsewhere later that month. It could also be presumed that had something unexpected happened which would have delayed or terminated Ron and Dee's plans to move that they would have continued to `reside' with their respective parents until another opportunity arose enabling them to reside elsewhere.
After their departure from Tennessee on June 1, Ron and Dee intended to subsequently establish residence in a particular house in Little Rock, and had taken some steps towards establishing it, including discussing renting month-to-month with the owner and applying for phone service. However, at the time of the accident, the Johnsons' possessions were not in Little Rock, nor had Ron and Dee spent any time at the intended residence. Rather, the possessions, as well as the Johnsons themselves, were indefinitely in Columbus and Plantersville with the respective parents. Therefore, at the time of the accident, we find that they were simultaneously residents of Arkansas and Mississippi while residing with their respective parents, albeit temporarily.
We noted the difficulty of pinning a precise meaning to an insurance policy term in Fleming v. Travelers Ins. Co., 206 Miss. 284, 39 So.2d 885 (1949). Considering the word "household," we stated:
In seeking to expand the meaning to include many diverse situations, the courts, have, without perfect consistency, solved their dilemmas by such test as the fact or obligation of continual support, housing under a single roof, actual dwelling together, absence animo revertendi; constructive presence or actual absence. Divergent results have followed the application of these criteria operating in some cases to establish the status, and in others to deny it. It is not our purpose to bring to view the many decisions which illustrate, not only the application of these tests, but also the common denominator is the evident purpose of the statute or contract involved. `Household' cannot be satisfactorily defined as an abstract term. Definition by lexicon supplies elements which are seized upon by opposing interests, and isolated from other factors furnish material relevant to contradictory conclusions.
We are dealing with a contract of insurance. We must inquire, what the parties thereto meant. Practical considerations must be given play, interpreted in the light of the purpose of the policy provision... .
Fleming v. Travelers Ins. Co., 206 Miss. at 293-94, 39 So.2d at 887 cited in Perry v. Southern Farm Bureau Ins., 251 Miss. 544, 549, 170 So.2d 628, 630 (emphasis added).
Of course, the original intentions of the parties forming the contracts underlying this case do not appear in the record. Nevertheless, it seems likely that the Charles Johnsons or the Ballards intended their UM coverage to extend to their emancipated, married children during any indefinite subsequent visits.

IV.

CONCLUSION
Today we expressly overrule Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (Miss. 1964). Under the facts presented, Ron and Dee were residents of their parents' households at the time of the accident, and therefore, eligible to collect UM benefits under the Preferred policies issued to their parents. The trial judge improperly determined that Preferred was entitled to summary judgment. We reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and SULLIVAN, McRAE and SMITH, JJ., concur.
*876 HAWKINS, C.J., specially concurs with separate written opinion joined by PRATHER, P.J., and SMITH and BANKS, JJ., concurs with separate written opinion joined by PITTMAN, J.
HAWKINS, Chief Justice, specially concurring:
Under the precedent of Aetna Cas. & Sur. Co. v. Williams, 623 So.2d 1005 (Miss. 1993), this Court is correct in reversing. I commend the majority for at least explicitly overruling Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964), whose holding is decidedly contrary to this Court's decision in Aetna. In Aetna the majority simply ignored Goens v. Arinder. Of course, another case contrary to Aetna and today's holding is Fleming v. Travelers Ins. Co., 206 Miss. 284, 39 So.2d 885 (1949). To be completely consistent, the majority might overrule that as well.
I remain convinced the Court took the wrong turn in Aetna; Goens and Fleming announced good principles of law, and properly applied them to the facts. Here's why. Aetna and today's decision make a legal definition of "resident" quite different from ordinary meaning.
Now the Johnsons could have purchased uninsured motorist coverage on the pickup truck they owned. For whatever reason, they chose not to obtain that coverage. Yet, this Court, as it did in Aetna, sees fit to protect them and give them uninsured motorist coverage out of the use of vehicles belonging to each of their parents on premiums paid by their parents, when they did not choose to purchase it for themselves when they took out insurance on their pickup, if indeed it had any insurance at all. By extending this coverage to instances and cases never anticipated by the insurer, or what would ordinarily be expected by the public, uninsured motorist premiums are increased. But of course, Aetna has already made all this abundantly clear.
I suppose the basic question is which is better, to protect those who choose not to protect themselves, or those who had no opportunity to be protected. I suggest the latter is preferable. Let us suppose that while Ron was at his parents' home in Columbus, his father needed to make a short trip, and the only vehicle at the house was Ron's pickup. He would have no hesitancy in using it, see no reason not to. Let us further suppose he had a wreck, terribly injuring some innocent people, and exposing himself to thousands of dollars in liability. These innocent people want some satisfaction, but Preferred Risk tells them all, "Oh, no. Our insurance coverage does not extend to Mr. Johnson, because he was driving a vehicle belonging to a resident of his household, and that is excluded."
Who should be protected under the Charles Johnson liability insurance policy, his son who chose not to purchase any uninsured motorist coverage on his own vehicle, or totally innocent people who had no chance to protect themselves from Mr. Johnson's negligence?
Or, while Sara was in her parents' home, her mother, Mrs. Ballard, had needed to drive the Johnson's pickup on some errand, and while doing so she struck and seriously injured a child pedestrian? Same story, same answer by Preferred. Who should suffer?
The same definition which benefits the Johnsons may in another equally likely scenario deprive the injured party as well as the insured of protection they would ordinarily assume they had.
As in Aetna, today's holding can cut both ways. How much better it would be if we plowed right down the middle, let words mean what people ordinarily expect them to mean, and not twist and distort meanings. Plainly, this young, married adult couple were not residents of either of their parents' household, but each temporarily visiting his and her respective parents' home. Who are we trying to protect, the innocent third party who is injured, or those "trying to get something for nothing?"
PRATHER, P.J., and SMITH, J., join this opinion.
BANKS, Justice, concurring:
I concur in the result reached by the majority and much of what it says. I write *877 separately to note that in my view, Goens v. Arinder need not be overruled to reach this result and I would not do so. Nor do I base my concurrence on any supposition as to whether the Johnsons and the Ballards "likely" intended that their UM coverage extend to their married children during visits. It is my view of the facts of this case that Ron and Dee had not established permanent residency in any place, including Tennessee, where Ron had been completing his education, other than their parents' home.
PITTMAN, J., joins this opinion.
NOTES
[1] The truck was registered in Tennessee.
[2] See also State Farm Mut. Auto. Ins. Co. v. Gazaway, 152 Ga. App. 716, 263 S.E.2d 693 (1979) (summary judgment precluded where there was issue of material fact as to whether wife was "resident of the same household" as husband so as to be an insured under husband's UM policy, where couple had lived separately for years but had not divorced).
[3] See also Limoges v. Horace Mann Ins. Co., 134 N.H. 474, 596 A.2d 125 (1991) ("the final interpretation of the language in an insurance policy is a question of law, one left to this court to decide ..."); Government Emp. Ins. Co. v. Dennis, 645 P.2d 672 (Utah 1982) ("the issue of whether one is a resident of the insured's household, under certain clear cut factual patterns, can be determined as a matter of law"); 77 C.J.S. at 305, "Residence" ("where there is a conflict in the evidence as to residence, the question is one for the jury, but where only one reasonable conclusion can be reached from the evidence the court will resolve the question as a matter of law").
[4] The language in the Preferred policies at issue in this case conforms to this statutory definition. See Miller v. Allstate Ins. Co., 631 So.2d 789, 791 (Miss. 1994) (Although the language is not identical, the policy definition of "insured" does not conflict with the statutory definition of "insured").
[5] The trial court did not hold that the Stogners were a part of the Arinder household, but nonetheless found for the insurer. 248 Miss. at 822, 161 So.2d at 511.
[6] The Court stated that the legislature's use of the term "resident" rather than domicile was a policy decision based on the "profusion of divorce and broken homes in today's society." The Court reasoned that non-custodial parents often provide insurance for a child, and that both a child and his or her custodial parent would be disadvantaged if the non-custodial parent were not entitled to provide insurance. See Aetna Cas. And Sur. Co., 623 So.2d at 1009.