# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00131-SCT

*MISSISSIPPI FARM BUREAU MUTUAL INSURANCE COMPANY*

*v.*

*JAMES DONALD JONES, T.C.O. MINISTRIES, THE ESTATE OF MONTY A. BECKHAM, AND BENTLEY BECKHAM AND DIANE BECKHAM, THE WRONGFUL DEATH HEIRS OF MONTY BECKHAM*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/1999 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | H. SCOT SPRAGINS |
| | GOODLOE TANKERSLEY LEWIS |
| ATTORNEYS FOR APPELLEES: | WENDELL H. TRAPP, JR. |
| | WILLIAM HULL DAVIS, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 1/13/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/3/2000 |

## EN BANC.

## BANKS, JUSTICE, FOR THE COURT:

¶1. In this case, we are asked to determine the scope of an exclusionary clause of an insurance contract. We apply the familiar principle that such clauses should be strictly construed against the insurer and in favor of the insured. Doing so, we affirm the trial court judgment.

### I.

¶2. TCO Ministries ("TCO") is a gospel singing group, based in Booneville, Mississippi. In 1994-1995, TCO was a part time ministry performing at churches, revivals, and other similar type church functions. James Donald Jones ("Jones") joined the group in 1993.

¶3. In November of 1994, TCO purchased a 1962 "Greyhound" bus for the purposes of transporting the singing group and its equipment. The bus was originally titled in Jones's name, because TCO was told by the seller the bus could be insured as a RV. This was not the case. The bus was not classified as a RV, because it failed to meet certain requirements. In February of 1995, Jones signed the title of the bus over to TCO.

¶4. Jones's duties (as a TCO member) were to drive the bus and sell items from TCO's product table. Jones does not sing. Jones obtained a commercial driver's license specifically for the purpose of his bus

driving duties. The bus driving duties were also shared by Max Moorman and Gary Cleveland. Whenever TCO used the bus for a trip Jones, Moorman, or Cleveland would drive; however, if the trip was extended, the three would alternate as needed. Jones did not receive any payment for driving the bus.

¶5. The bus was originally kept on a church parking lot. However, TCO was required to move the bus when the church needed more parking space. The bus was then kept at Jones's home because he had ample space and his home was centrally located as to the other members of TCO. Jones generally handled the bus maintenance. TCO always paid for, or reimbursed Jones whenever he used his personal money, for the maintenance and gas. It is unclear how many times Jones actually drove the bus. TCO, however, took about eight trips in the bus before the accident.

¶6. This case is a declaratory judgment action, which arose out of an automobile accident that occurred on March 3, 1995. The bus, driven by Jones collided, with a car driven by Monty Beckham. Beckham died as a result of the collision. On December 7, 1995, the Estate and heirs of Beckham filed a wrongful death action against Jones in Prentiss County. The bus was insured by State Farm Insurance Company ("State Farm"). Jones was a named driver under State Farm's insurance policy covering the bus. State Farm provided for the defense of Jones and TCO in the wrongful death action.

¶7. Jones maintained insurance for his personal vehicle through Mississippi Farm Bureau ("MFB"). Jones made demands for indemnity and defense pursuant to his MFB insurance policy. The relevant part of Jones's MFB insurance policy provides the following coverage exemption:

> ### IV. USE OF OTHER AUTOMOBILES
>
> (d) this insuring agreement **does not** apply
>
> (1) to any automobile owned by or **furnished for the regular use** to either the named insured or a member of the same household.

MFB, in doubt as to its coverage obligations to Jones, filed this action seeking declaratory judgment on October 16, 1996. MFB joined Jones, TCO, and the heirs of the estate of Monty Beckham as defendants. Jones and TCO responded through counsel retained by State Farm to defend the wrongful death lawsuit. The other defendants did not answer. After discovery, both sides filed motions for summary judgment. On January 11, 1999, the trial court denied MFB's motion for summary judgment; however, the trial court granted Jones's and TCO's motion for summary judgment. The trial court held Jones was covered by his MFB policy in regard to the bus accident.

## II.

¶8. We have held that unless the clause of an insurance agreement is ambiguous it should be enforced as written. *Gulf Guar. Life Ins. v. Duett*, 671 So. 2d 1305, 1308 (Miss. 1996); *Nationwide Mut. Ins. Co. v. Garriga,* 636 So. 2d 658, 662 (Miss. 1994); *Cherry v. Anthony, Gilbert, Sage,* 501 So. 2d 416, 419 (Miss. 1987). We have also held that language in exclusionary clauses must be written in clear and unmistakable language and that such clauses are always strictly interpreted. *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866 (Miss. 1995); *National Old Line Ins. v. Brownlee*, 349 So. 2d 513, 514 (Miss. 1977); *Home Owners Ins. Co. v. Keith's Breeder Farms, Inc.*, 227 So. 2d 293, 296 (Miss. 1969). Further, insurance contracts are liberally construed in favor of the insured and strictly construed against the insurer. *Burton v. Choctaw County*, 730 So. 2d 1, 8 (Miss. 1999) ("our

jurisprudence requires that the language in insurance contracts, *especially exclusionary clauses*, be construed strongly against the drafter.") (emphasis added); *Johnson*, 659 So. 2d at 871; *Garriga*, 636 So. 2d at 662; *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1373 (Miss. 1981); *Cruse v. Aetna Life Ins. Co.*, 369 So. 2d 762, 764 (Miss. 1979).

¶9. We ruled on an exclusionary clause similar to the one now before us in *Moore v. State Farm Mut. Auto. Ins. Co.*, 239 Miss. 130, 121 So. 2d 125 (1960). In *Moore*, the plaintiff was employed by Wade Tung Oil Co. to drive trucks and perform various other duties. *Id.* at 133, 121 So. 2d at 126. The employer owned 10 trucks all of which the plaintiff drove; he didn't use any one truck specifically. The plaintiff was injured on one occasion while out driving for his employer. He slipped and fell while he was in the trailer of the truck. He made a claim upon his personal car insurance for medical payments. We held that the truck was "furnished for the regular use" of the plaintiff even though the plaintiff did not drive a specific truck and drove only about two times a week. *Id.*

¶10. There are significant differences between *Moore* and this case, however. Jones was never paid for his services, and he drove much less frequently. It is clear that the vehicle here in question was obtained for the use of the ministry. Jones just happened to be one of the persons with the ministry who drove.

¶11. We hold that under the "totality of the circumstances" and in applying a strict construction to the language of the exclusionary clause the bus in question was not "furnished" for Jones's use.

## CONCLUSION

¶12. For the foregoing reasons, we affirm the circuit court's judgment granting Jones's and TCO's motion for summary judgment and denying MFB's motion for summary judgment.

¶13. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH AND WALLER, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., AND COBB, J.**

**MILLS, JUSTICE, DISSENTING:**

¶14. The majority correctly asserts that exclusionary clauses in insurance contracts are to be strictly construed and, furthermore, that exclusionary clauses are to be construed strongly against the drafter. *Johnson v. Preferred Risk Auto Ins. Co.*, 659 So.2d 866, 871 (Miss. 1995); *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994). Notwithstanding these well-established generalities I find the majority's interpretation of the exclusionary clause in the case sub judice to be patently erroneous. Therefore, I respectfully dissent.

¶15. This Court enforced an exclusionary clause similar to the one here in *Moore v. State Farm Mut. Auto. Ins. Co.*, 239 Miss. 130, 121 So.2d 125 (1960). The majority aptly cites *Moore* but attempts to distinguish it from the present case in two ways: (1) Jones was not paid to drive the bus, and (2) Jones drove the bus much less frequently than Moore more drove his employer's truck. The majority also makes much of the fact that the bus was not "'furnished' for Jones' use" but was used for the ministry's purposes.

¶16. In *Moore*, the insured was, in fact, paid to drive his employer's truck. *Moore*, 239 Miss. at 133, 121

So.2d at 126. Driving the truck was part of his job. **_Id._** However, this fact is immaterial. The question is whether the insured was driving or occupying an automobile "furnished for the regular use" of the insured. Being paid to drive the automobile in question is not conclusive evidence of regular use. As such, the converse is not necessarily true. Certainly, there are many situations in which one is furnished an automobile for regular use to benefit someone or something else and is not subsequently paid for his driving services. Many volunteer projects and services involve the use of automobiles furnished by charity or nonprofit organizations for regular use by its volunteers in order to help accomplish the organization's mission. Would the majority hold that these volunteers were also covered in spite of an exclusion clause in their own personal insurance contracts simply because they were not being paid to drive? While compensation for driving services can be used as proof of the regular use of an automobile, it is not definitive evidence of such. More important, the lack of compensation for driving services cannot be used to prove that the insured was not a regular user of the automobile.

¶17. The majority's second distinction between the case *sub judice* and **_Moore_** involves the frequency of actual use. This issue is pivotal in one respect. If the record had shown that Jones had driven the bus many hundreds of times then, under its analysis, the majority would most likely have found that Jones "regularly used" the bus. However, the record in the case sub judice indicates that Jones drove the bus for TCO ministries only six or seven times. Placing too much emphasis on the number of times an insured drives an automobile not listed on his policy forces the impracticable and inaccurate question: how many times must an insured drive an automobile in order to constitute regular use? Relegating the issue to a simple matter of numbers would be to misconstrue the definition of the word "regular." Regular is defined as: "steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation; steadily pursued . . . recurring . . . at stated, fixed or uniform intervals. . . . ." Webster's Third New International Dictionary 1913 (1986). Therefore, in deciding whether an automobile has been furnished for the regular use of the insured, the frequency of use, or as is the case here, the infrequency of use is not dispositive of the issue. The correct questions are whether the automobile was furnished to the insured to be used at "stated, fixed or uniform intervals" and whether the insured, in fact, used the automobile at those fixed intervals.

¶18. TCO Ministries, a gospel singing group, purchased a bus to transport its members and equipment to and from its performances. James Jones is a member of TCO. He does not sing. His duties with TCO include driving the bus and selling TCO products. Jones obtained a commercial drivers license for the express purpose of driving the TCO bus. Every time that TCO used the bus to drive to a performance Jones either drove the bus exclusively or shared the driving with other members. This use of the bus by Jones occurred at stated, fixed or uniform intervals; that is, when TCO needed the bus to carry its members and equipment to a performance Jones drove that bus. Furthermore, when the bus needed fuel or repairs Jones drove the bus. Of course, this tangential use of the bus was a necessary consequence of using the bus for TCO purposes and as such was not separate and apart from the primary use of the bus. Clearly, Jones was furnished the bus by TCO Ministries for the regular use of fulfilling TCO Ministries' driving needs.

¶19. Finally, the majority emphasizes the fact that the bus was not furnished for Jones' personal use. This is utterly insignificant. In **_Moore_**, the insured was driving the truck in conjunction with his job. **_Moore_**, 239 Miss. at 133, 121 So.2d at 126. He was using the truck to fulfill his duties to his employer not to fulfill his own *personal* needs. **_Id._** In the case sub judice, Jones was using the bus in conjunction with his duties to TCO Ministries. In no way does the exclusion clause state either expressly or impliedly that only the regular use of other automobiles for personal needs will be excluded. All regular use, personal or otherwise, of

other automobiles is excluded under the exclusion clause. The policy simply and clearly states that the "insuring agreement does not apply to any automobile owned by or furnished for regular use to . . . the named insured . . . ." Any kind of regular use of another automobile not listed in the policy is excluded. Accordingly, the specific reason for such regular use is decidedly immaterial.

¶20. For the foregoing reasons, I strongly but respectfully dissent.

**PRATHER, C.J. AND COBB, J., JOIN THIS OPINION.**