**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————————

No. 01-60022
(Summary Calendar)

———————————

RONNIE E. YOUNG, and Wife; PATRICIA YOUNG, Individually
and as Mother and Next Friend of; LESLEY YOUNG, a Minor,

Plaintiffs - Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.;
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants - Appellees.

———————————————————————

Appeal from the United States District Court
For the Northern District of Mississippi
2:97-CV-24-B-B

———————————————————————

December 4, 2001

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Ronnie E. Young and his wife, Patricia Young (collectively, "the Youngs") appeal a jury

verdict in favor of State Farm Mutual Automobile Insurance Company and State Farm Fire and

———————————

[*]    Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

Casualty Company (collectively, "State Farm"). The Youngs filed this case in federal court pursuant to 28 U.S.C. § 1332, alleging that State Farm breached their insurance contract by denying their claims arising out of an accident involving their daughter, Lesley Young ("Lesley"). We GRANT the Appellant's motion to amend the record excerpts to include a verbatim transcript recording of the district court's jury instruction. We AFFIRM, holding that the district court correctly found that substantial evidence supported the jury's verdict. We also conclude that the trial court did not incorrectly place the burden of proof on the issue of Lesley's emancipation on the Youngs.

I.

This appeal arises out of an accident in New Orleans, Louisiana, on February 23, 1996. An unidentified driver struck and injured Lesley. She was twenty years old at the time of the accident.

Lesley lived with her parents in Hernando, Mississippi, until July 1994, at which time she left home after an argument with her father. She traveled throughout the country for six months, maintaining only minimal contact with and receiving no financial assistance from her parents. Lesley returned to Hernando and enrolled in Memphis State University in the Spring of 1995. After completing the semester, she again left home for the open road. From May 1995 until the accident in February, Lesley traveled the country by jumping freight trains and hitchhiking.

On her departure, her parents gave her one thousand dollars, a phone card, and prescription medication for her face. The Youngs did not attempt to prevent her from leaving, nor did they provide her with any further support for the next six months while she was traveling. They admit that they had no means of locating or communicating with their daughter.

On the date of the accident, Ronnie Young possessed several automobile insurance policies and a Personal Liability Umbrella Policy (PLUP) with State Farm. These policies included

substantially equivalent uninsured motorist (UM) provisions, which apply to accidents with other motorists not carrying insurance or to situations in which the identity of the other motorist cannot be ascertained. These auto policies provide coverage for the named insured, his or her spouse, and their relatives who were residents of the insured's household. Thus, in order to recover under the policy, the Youngs had to establish that Lesley remained a resident of their household at the time of the accident.

The Young family submitted claims under these policies to State Farm, alleging that the UM provisions of their various policies covered Lesley's injuries. State Farm, concluding that Lesley was not a "resident relative" of the named insured, denied the family's claims. The Youngs then filed a claim for breach of contract, breach of fiduciary duties, and fraud in the United States District Court for the Northern District of Mississippi based on diversity jurisdiction. At trial, a jury determined that Lesley was not a "resident," as defined by the insurance provisions, of her parents household at the time of the accident and denied the Youngs' claims under the policies.

The district court then rejected the Youngs' motion for a judgment notwithstanding the verdict, refusing to overturn the jury's findings of fact. In their post-judgment motion, the Youngs also challenged the trial court's jury instructions, arguing it improperly placed the burden of proof on them to prove the affirmative defense of emancipation. The district court refused to reconsider its jury instruction. The Youngs now appeal these decisions.

II.

The judgment in this case became final when the district court denied the Youngs' motions for a judgment notwithstanding the verdict or a new trial. On appeal, the Youngs essentially contend that there was insufficient evidence presented at trial to support the jury's findings that their daughter

was not a resident in their home and therefore not covered by the State Farm UM policy. In these circumstances, we consider such insufficiency arguments as an appeal from the trial court's denial of a motion for judgment notwithstanding the verdict. *See Melear v. Spears*, 862 F.2d 1177, 1182 (5th Cir. 1989).

In reviewing a denial of a motion for judgment notwithstanding the verdict, we consider all of the evidence and all reasonable inferences in the light most favorable to the prevailing party. *See Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892 (5th Cir. 1990). In making this determination, we are continually cognizant of the principle that "it is the function of the jury as the traditional finder of fact, and not the Court, to weigh conflicting evidence." *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 164 (5th Cir. 1990) (Internal citations omitted). Thus, the jury verdict is sustained unless "the facts and inferences point so strongly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

The Youngs first contend that the district court erred in not overturning the jury's conclusion that Lesley was no longer a resident of their home. They argue that the jury's findings conflicted with the overwhelming weight of evidence presented at trial that Lesley did, in fact, reside in their household. The Youngs' argument on this point is without merit.

To recover uninsured motorist benefits provided by the State Farm policies, the Youngs must prove that Lesley was an "insured" person under either the terms of those policies or under the Mississippi UM statute. *See* MISS CODE ANN § 83-11-101 *et seq.* (Supp. 1993); *State Farm Mut.*

*Auto. Ins. Co. v. Davis*, 613 So.2d 1179, 1180 (Miss.1992).[1]  The UM statute establishes a minimum

required amount of coverage under Mississippi law.  *See Johnson v. Preferred Risk Auto. Ins. Co.*,

659 So.2d 866, 872 (Miss. 1993).  Therefore, if the terms of an individual policy are more narrow

than those provided by the statute, the statutory definition governs.  The language of the policies and

the UM statute should be read in conjunction with each other and "must be construed liberally to

provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage."

*Johnson*, 659 at 871 (citing *Williams*, 623 So.2d at 1008).

The UM statute provides the following definition for the term "insured":  "The term "insured"

shall mean the named insured and, while *resident of the same household*, the spouse of any such

named insured and relatives of either. . .."  MISS. CODE ANN. § 83-11-103 (Supp.1993).  The State

Farm automobile policies define "insured" as including "[a] person related to you or your spouse by

blood, marriage or adoption *who lives with you*."  Supp. R*.,* p. 240 (emphasis added).  The policy

language could arguably be read as requiring actual physical presence in the household of the named

insured in order to be a relative of the insured.  Construed liberally in order to favor a recovery, it

merely requires that Lesley reside with her parents at the time of the accident in order for her to

---

[1] MISS. CODE ANN. § 83-11-101, provides in relevant part:

> (1) No automobile liability insurance policy or contract shall be issued or delivered after January 1,
> > 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance; however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section.

recover. Even assuming this reading is implausible, because the language of the State Farm policies would be more narrow than the UM statute, we would nevertheless utilize the UM statutory definition of "insured" person.

A finding of residency under the statute hinges on the degree of one's attachment to a particular place. *Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005, 1010 (5th Cir. 1993). While actual presence is a factor under Mississippi law, it is the intent of the party claiming residency to remain for some time at the particular place in question that is primarily determinative. *Johnson*, 659 So.2d at 871.

Even under this expansive definition of residency, the jury had sufficient evidence so as to conclude that Lesley had no intent to return to her parents house in Mississippi at the time of the accident. Several witnesses described Lesley as a homeless runaway, living on the streets. Patricia Young also instructed her brother not to give Lesley money because she was homeless. Additionally, the Youngs had Lesley removed as a driver on their automobile insurance policy because she was no longer in the household. After the accident, Lesley indicated that she was homeless to hospital personnel. Reading all inferences in favor of State Farm, the evidence is such that reasonable jurists could conclude that Lesley had no intention of returning home at the time of the accident and was not a resident of the Young household. Thus, the Youngs have failed to present sufficient evidence to overturn the jury's findings.

III.

In the alternative, the Youngs contend that the Mississippi Supreme Court's decision in *Williams* establishes their daughter's residency in their home as a matter of law. Specifically, they focus on the Court's conclusion that "a minor is legally unable to establish a residence separate and

apart from his or her parents." *Id.,* 623 So.2d at 1010.

The *Williams* Court, however, expressly limited its decision to unemancipated minors. The court commented: "The threshold issue on appeal is whether an *unemancipated* minor . . . is a resident of the household of both parents for purposes of the Uninsured Motorist Act." *Id.*, at 1006. Mississippi law clearly distinguishes between emancipated and unemancipated minors for the purpose of determining residency.[2]   In *State Farm Mutual Automobile Insurance Company v. McGee*, the Court commented: "We hold . . . that a child is a resident of both parents' households until he or she reaches the age of majority *or becomes fully emancipated*.  759 So.2d 358, 362 (Miss. 2000) (emphasis added).  Under the reasoning of *Williams* and *McGee*, a minor may establish a separate residence from his or her parents either when they reach the age of majority *or when they are emancipated*.  In the later case, the minor essentially takes on most of the rights and obligations of an adult, including the right to reside separately.  Thus, even though Lesley was a minor at the time of the accident, if the jury correctly concluded that she was emancipated, it follows that they also could have found that she no longer resided with her parents.

The Mississippi Supreme Court, in *Caldwell v. Caldwell*, defined emancipation as follows: "Emancipation . . . means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents."  579 So.2d 543, 549 (Miss. 1991). Emancipation can occur either through the actions of a parent or by the actions of the child.  *Rennie v. Rennie*, 718

---

[2] Mississippi Supreme Court jurisprudence has carefully and consistently maintained this clear distinction between emancipated and unemancipated minors in other contexts as well, according emancipated minors the legal status of adults.  *See e.g., Cumberland v. Cumberland*, 564 So.2d 839, 847 (Miss. 1990) (the obligation to pay child support terminates at the age of majority or when the child is emancipated); *Lancaster v. Lancaster*, 57 So.2d 302 (Miss. 1952) (emancipated minor may sue his father in tort); *Chapman v. Hughes*, 61 Miss. 339 (1883) (emancipated minor may contract as an adult).

So.2d 1091, 1093 (Miss. 1998) (minor "voluntarily chose" emancipation).[3]

The issue of whether a child has emancipated herself from the custody of his or her parents is one of fact, for determination by the finder of fact. *Dept. of Human Serv. v. Fillingane*, 761 So.2d 869, 871 (Miss. 2000). We give "great weight and deference to juries on findings of fact and will not set aside a verdict unless it is against the overwhelming weight of the evidence and credible testimony." *Parker v. Thornton*, 596 So.2d 854, 858 (Miss.1992) (jury determination that the defendant had not breached express or implied warranties). Therefore, we will uphold the jury's finding that Lesley was emancipated unless substantial evidence establishes that the Youngs had not freed her from their care, custody, and control at the time of the accident and that Lesley had not abandoned this relationship herself through her actions.

Given this deferential standard of review, the evidence presented at trial supports the jury's

---

[3] The Mississippi legislature further elaborated on this definition, establishing a series of non-exclusive situations in which the courts could find emancipation. MISS. CODE. ANN. § 93-5-23 provides, in relevant part:

> The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
> (a) Attains the age of twenty-one (21) years, or
> (b) Marries, or
> (c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or
> (d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.

The Mississippi courts have held that the effective of § 95-5-23 has been to enlarge rather than diminish the judicial definition of emancipation. *See Rennie,* 718 So.2d at 1093 ("Other situations, not contemplated by the statute, may also establish emancipation."). Because Lesley does not meet any of these requirements, we will analyze whether she was emancipated solely under the standards established in the case-law.

conclusion that Lesley was emancipated. Garnet West, Patricia Young's brother, stated that his sister had told him that Lesley had "run away from home" and that she "was living on the streets." Mrs. Young also told West "not to give [Lesley] any money; that she was living on the street and she didn't need any money from us." Ronnie Young further commented to West that Lesley was "eighteen and she can do legally whatever she wants." Patricia Young's sister testified that the Youngs had no idea where Lesley was or whether she would come home. If she did come home "she was not to bring a baby home in her arms; that she would not be welcome." From these statements, alone, the jury could have reasonably inferred that the Youngs had ceased to care for and control their daughter.

In addition, the jury was presented with evidence of Lesley's own intent to live independently from her parents. Lesley testified that she did not receive any financial support from her parents while she was traveling. Moreover, she testified that while traveling she was not subject to any rules or control from her parents. From this evidence, the jury could have reasoned that Lesley had effectively abandoned her home in Mississippi and was living on her own. The district court correctly found that the Youngs have presented insufficient evidence to overturn the jury's finding that Lesley was emancipated. Under Mississippi law, therefore, she could have established a separate residence from her parents.

IV.

The Youngs also challenge the trial court's jury instruction on the issue of emancipation. They maintain that the language of that instruction impermissibly placed the burden of proving that their daughter was not emancipated on them. Again, this argument is without merit.

The Youngs, as part of their prima facie case, bear the burden of establishing that Lesley was

insured under either the Mississippi statute or the State Farm policies. *Johnson*, 659 So.2d at 871 ("To recover UM benefits provided by an insurance policy, a claimant must first prove that he or she is an "insured" under either the insurance policy and/or the UM statute."). In order to establish that Lesley was "insured," they must establish by a preponderance of the evidence that she was a resident of their household at the time of the accident. Because Lesley was a minor, a presumption arises that she is a resident of her parent's household because legally she cannot establish a separate residence. *See Williams*, 623 So.2d at 1010-11. State Farm, however, can rebut this presumption by establishing that Lesley was emancipated and had assumed the status of an adult under Mississippi law.

Thus, the trial court should have instructed the jury that if they found that Lesley was a minor, the Youngs had established a prima facie case that she was a resident of their household at the time of the accident. The Youngs should prevail, therefore, unless State Farm affirmatively establishes that she was emancipated. The trial court instructed the jury:

> In deciding [the issue of residency], you must first determine whether Lesley Young was considered to be of the age of majority and if you decide that she is under the age of majority, then you must decide whether Lesley Young was emancipated.
> ***
> In the this case, if you find that Lesley Young was under the age of majority, but was emancipated from the care, custody and control of her parents, then you're instructed that you should return a verdict in favor of State Farm.

State Farm argues that had the trial court improperly placed the burden on the Youngs, the instruction would have required the jury to affirmatively find that Lesley was not emancipated. Under this erroneous instruction, the Youngs would prevail only if the jury found that Lesley was both a minor and was not emancipated. The trial court's jury instruction did not require the Youngs to establish both these elements in order to prevail. The court's instruction required the jury first to

make a positive finding that Lesley was a minor child. Under the court's instructions, the jury then had to find affirmatively conclude that Lesley was emancipated. This properly placed the burden of proof on State Farm. If the jury failed to find emancipation, then the Youngs would prevail because Lesley would be a resident of their household as a matter of law. *See Williams*, 623 So.2d at 1006. Thus, the trial court's jury instruction appropriately allocated the burden of proof on the issue of residency between the parties by requiring State Farm to prove Lesley's emancipation.

For the above-mentioned reasons, the decision of the district court is AFFIRMED.