764 So.2d 502 (2000)
Donald BROWN, Appellant,
v.
Virginia (Gordon) BROWN, Appellee.
No. 1999-CA-00027-COA.
Court of Appeals of Mississippi.
August 1, 2000.
*503 Christopher Andrew Arledge, Crystal Springs, Attorney for Appellant.
Joseph A. Fernald, Jr., Brookhaven, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY AND FACTS
¶ 1. This is an appeal from the Copiah County Circuit Court where Donald and Virginia Brown were divorced on October 8, 1992. Pursuant to the divorce, a property settlement was entered which, in pertinent part, awarded primary physical custody of the parties's minor children, Seth and Tucker, to Virginia with reasonable visitation rights to Donald.
¶ 2. This petition comes as a result of Donald's May 4, 1998 filing of a motion for modification requesting a change in custody for both sons. In support of his motion, Donald alleges that at different times Virginia had three separate men living with her in her one-bedroom apartment, forcing the boys to sleep on the couch. Donald also showed where Virginia's delinquency in paying utility bills caused her electricity and telephone service to be cut off, that she had moved six times within six years, and that she, among other things, repeatedly used foul language in front of the children. In support, as well, Donald offered twelve year old Seth Brown's statement that he preferred to live with his father.
¶ 3. After a trial on this matter, the chancellor ruled no material changes had occurred as to warrant a change in custody of the two sons from Virginia to Donald and that the best interests of the children would be that they not be separated from one another. From such denial of modification of custody, Donald now appeals.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 4. In this petition, appellant Donald Brown raises three issues for our review. First, Donald argues the chancellor erred in considering each of Virginia Brown's offending acts individually rather than under a totality of circumstances analysis. Second, Donald argues the chancellor did not give proper deference to Seth Brown's statement that he preferred to live with his father. Third, Donald argues the chancellor erred in finding Donald had slumbered on his rights by not bringing this motion for modification sooner.
¶ 5. With each issue, our standard of reviewing the chancellor's decision is clear: "This Court will not overturn the decision of a chancellor in domestic cases when those findings are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard." Kennedy v. Kennedy, 650 So.2d 1362, 1366 (Miss.1995). As described further in this opinion, we find no abuse of discretion with regard to each of the three issues presented and now affirm the chancellor on all issues.

ANALYSIS OF THE ISSUES PRESENTED

I. WHETHER THE TRIAL COURT ERRED IN CONSIDERING EACH ALLEGED ACTION OR OMISSION BY VIRGINIA BROWN INDIVIDUALLY, RATHER THAN BY THE TOTALITY OF THE CIRCUMSTANCES, THUS FAILING TO FIND THAT THE CHILDREN'S CUSTODIAL ENVIRONMENT WAS CLEARLY ADVERSE TO THEIR BEST INTERESTS, EVEN THOUGH *504 THE CHILDREN WERE NOT AVERSELY AFFECTED, AND THAT AS SUCH A CHANGE IN CUSTODY WAS WARRANTED.
¶ 6. With this issue, Donald argues both the sufficiency of evidence did not support the chancellor's decision and that his motion for directed verdict should have been granted. In support of his motion that modification of custody was warranted, Donald submitted that Virginia changed residences six times in six years; she failed to pay utility bills causing such service to be cut off; she lived on different occasions with three different men in the same house as the children; she used profane and indecent language in front of the children; and she schooled the children in south Copiah County while the family lived in south Lincoln, forcing the kids to awaken at five thirty in the morning to ready themselves for school which caused the kids to fall asleep in class. Donald argues the chancellor erred in considering the charges individually that Virginia behaved inappropriately as custodian of the children, rather than view all charges collectively in a totality of circumstances review, and that the chancellor's specific address of each allegation shows that he apparently declined to conduct the proper "totality of circumstances" analysis, thus violating the rule that isolated incidents cannot be used in examining change in custody. As stated in Touchstone v. Touchstone, 682 So.2d 374 (Miss.1996), "the chancellor must have found that `the overall circumstances in which a child lives have materially changed and are likely to remain materially changed for the foreseeable future and, of course, that such change adversely impacts the child.'" Touchstone, 682 So.2d at 379 (quoting Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984)).
¶ 7. In our review of the chancellor's order, we see that since Donald opted to bring up individual instances in support of his contention that material changes had occurred, the chancellor chose to show how each individual allegation was not sufficient in itself or when taken with the whole, to constitute a material change. Donald's construction of the chancellor's explanatory decision is far more strict than should be read.
In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody. A chancellor's finding of fact on such a matter will not be set aside or disturbed on appeal unless the finding is manifestly wrong or is not supported by substantial credible evidence.
Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997) (citations omitted). Donald has not shown that such a substantial change in circumstances has transpired that the children have been adversely affected which would dictate that custody be changed to him. The chancellor did not abuse his discretion in this modification proceeding. This issue has no merit, and we affirm the chancellor's decision not to modify custody.

II. WHETHER THE TRIAL COURT ERRED IN NOT TAKING THE PREFERENCE EXECUTED BY SETH BROWN INTO CONSIDERATION AS PART OF THE TOTALITY OF THE CIRCUMSTANCES, INSTEAD OF CONSIDERING THE PREFERENCE SEPARATELY.
¶ 8. Seth Brown stated that he preferred to live with his father; however, the chancellor found this statement alone unpersuasive to change custody. Donald argues that the chancellor failed to conduct a totality of circumstances test to find that the best interests of the two Brown children would be to live with their father. The chancellor emphasized the negative effect a separation of the two boys would have on the younger brother and also expressed that, in his opinion, the best interest *505 and welfare of Seth would also be to remain with his younger brother.
Even if the court was to consider [the child's] preference as a factor in the custody determination, it would be merely one element of many to be weighed by the chancellor. The chancellor is not in any way bound to respect the desires of the child, since the main objective remains the best interests of the child.
Westbrook v. Oglesbee, 606 So.2d 1142, 1147 (Miss.1992). Seth Brown's statement of preference alone cannot be weighed so heavily as to, on its own, modify custody. Donald errs in alleging that the chancellor failed to use the totality of the circumstances to find a change in custody was warranted, namely because the chancellor failed to consider the totality of Seth's statement of preference in conjunction with Virginia's aforestated problems.
¶ 9. The chancellor described how he did consider Seth's preference, but that "the polestar consideration is the best interest of the child." Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996). Finding no abuse of discretion, we find the chancellor's indication in the record that he considered many factors, including Seth's preference and the best interests of the children, do not evidence an abuse of discretion, and we affirm on this issue.

III. WHETHER THE TRIAL COURT ERRED IN RULING THAT DONALD BROWN WAS NOT ENTITLED TO A CHANGE OF CUSTODY BECAUSE HE SLUMBERED ON HIS RIGHTS BY NOT BRINGING HIS MOTION TO CHANGE CUSTODY SOONER.
¶ 10. Donald cites a maxim of equity that essentially says that equity aids the vigilant, not those who slumber on their rights. The appellee states, however, that the chancellor was not applying laches as a bar to modification, but was only commenting on the failure of the appellant to assert a claim in a timely fashion, since some of Donald's allegations were four years removed in time. We decline to address this third issue since it only concerns a comment the chancellor made admonishing Donald that if he really were concerned for the children's well-being, he certainly would earlier have instituted action. Donald is claiming that his delay caused the chancellor not to modify the custody; as stated earlier in this opinion, this is not the basis for the chancellor's decision not to modify custody. This issue is without merit.

CONCLUSION
¶ 11. Finding no merit to any of the three issues which Donald Brown raises, we now affirm the chancellor on all issues.
¶ 12. THE JUDGMENT OF THE COPIAH COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, AND MOORE, JJ., CONCUR. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND THOMAS, JJ. MYERS, J., NOT PARTICIPATING.
BRIDGES, J., Dissenting:
¶ 13. I respectfully dissent. The first issue that troubles me in this case is the chancellor's reliance on his conclusion that Donald Brown somehow "sat on his rights" in requesting a modification of child custody. This is not a situation where ten years down the road following a custody decree that a father decides to ask for a modification in the physical custody of the children. Rather, the recent past of the children in this case found them having moved six times since the divorce of the parties and being subjected to the immoral conduct of their mother and her boyfriends. In addition, Donald was likely advised that his cause would be helped if his son were old enough to make a statement that he preferred to live with his father. Filing his *506 modification at a time when he was aware that it was his son's choice to live with him, along with what he believed was not a good home life situation for his children, did not amount to "sleeping on his rights." Whether or not Donald somehow slumbered on his rights, as the chancellor phrases it, is of no consequence as the overriding interest, as always, is the best interest of the children. In my opinion the chancellor improperly insinuated that had Donald made it into court earlier, he would have been granted the modification. In her brief Virginia cites a treatise for support of the position of the chancellor that Donald waited too long before filing his motion for modification. A change in custody based on the best interest of the child is not a "right" held by Donald as the chancellor and Virginia would have this court believe. Such a motion can be filed at any time where it is believed that the best interests of the child are not or have not been served. Virginia argues and the majority concludes that the chancellor did not apply laches to bar the modification of custody, but rather took the opportunity to comment on Donald's failure to file the action sooner. In researching the issue, I have not found any case in which laches may be used to bar a modification of custody issue. In some extraordinary situations, the equitable doctrine of laches has been applied to cases involving past due child support. See Hoffman v. Foley, 541 So.2d 145, 146 (Fla. 3rd DCA 1989); Teta v. Teta, 297 So.2d 642, 645 (Fla. 1st DCA 1974). Lastly, the majority concludes that the chancellor's comments on this matter were simply to admonish Donald about his delay in filing the motion. If such an interpretation is made, the resulting inference is that Donald did not "care enough" or was not "concerned enough" to file the motion earlier. Such an inference or conclusion is in direct conflict with the evidence produced at trial. In my opinion, it was not within the law nor in the proper discretion of the chancellor to use the timing in the filing of the motion in the decision of whether or not it was in the children's best interest to change the custody arrangement. Such a decision must be made always with their best interest in mind and not based on whether such a motion was filed too late.
¶ 14. Contrary to the majority opinion, I would have determined that the chancellor did in fact abuse his discretion and erred in refusing to modify physical custody of the children for several reasons. In my opinion, the record contains sufficient evidence on which to find that a material change occurred such that a change in physical custody was in the best interests of the children. The evidence showed that Virginia regularly exhibited immoral conduct in the presence of her children. The parties twelve year-old child testified that he saw his mother and the men she was involved with going to bed with his mom in a t-shirt and underwear and her lover in shorts. Seth admitted at trial that it bothered him that his mother slept in the same bed with a man to which she was not married. In addition, Seth testified that he observed his mother enter the bathroom when she knew that her boyfriend/fiancee was bathing.
¶ 15. Virginia and her present husband both testified that they did not personally believe anything was wrong with them sleeping together in a bedroom prior to their marriage while the children were present in the house. Both testified that they did not engage in sexual relations while the boys were in the same bedroom as them. Virginia testified that at the time she engaged in similar activities with two other men, relationships prior to her current marriage, she did not believe that her behavior was wrong or had any impact on the children. Only in hindsight and with the knowledge that such conduct "bothered" her oldest son does she testify that perhaps it was not the "right" thing to do.
¶ 16. The testimony was clear that Seth indicated that his preference was to live with his father. Being twelve at the time *507 he testified and two months away from being thirteen, Seth was of the age set by the supreme court in which his choice of which parent he wanted to live with should be considered. Westbrook v. Oglesbee, 606 So.2d 1142, 1146 (Miss.1992)
¶ 17. Evidence at trial showed that Donald had lived in the same place-the marital home, since the parties were divorced. Seth testified that he considered Donald's home to be his permanent home. Donald was in a dating relationship with a woman he had been seeing for over three years. While Donald's work shifts were subject to change, he has a very stable job, one he stated he will keep until he retires. Donald has adequate care for the boys while he is working. All of this Virginia was not able to show. She had moved six times in six years; she had not maintained steady employment; she was in her second marriage since the divorce; she had had a boyfriend live with her and boys between her two marriages, subsequent to the divorce of the parties; and she regularly used foul language towards the boys and around the boys. However, after the filing of the action she started taking her children to church more regularly. She denied ever having intercourse in her bed while the children were in the room. "Cohabitation between persons not married to each other is against the law in Mississippi." Miss.Code Ann. § 97-29-1 (Rev. 1994). While the supreme court has observed that this law is frequently broken, nevertheless, unmarried cohabitation between an unrelated man and woman "remains a crime against public morals and decency...." Davis v. Davis, 643 So.2d 931, 935 (Miss.1994).
¶ 18. Even if it were argued that the children should not be split up, "[t]he general rule that it is in the best interests of the children to keep siblings together is not a per se rule, and in any domestic case, the best interest of the child is always the paramount concern." Stark v. Anderson, 748 So.2d 838 (¶ 13) (Miss.Ct.App.1999), Bowen v. Bowen, 688 So.2d 1374, 1380 (Miss.1997). Here, there was sufficient evidence showing that it was Seth's best interest to be in the custody of his father.
¶ 19. In my opinion, there was significant testimony on which the chancellor had to determine that a material change in circumstances had occurred. The boys went from living in the home of their parents to a six-year life of constant moving, changing schools, and being subjected to the immoral conduct of their mother and her companions, husband and boyfriends. For approximately a year, the children were without a phone at home to contact their father on a daily basis. For a significant period of time, the boys were required to awake at 5:30 in the morning so that Virginia could drop the boys off at the apartment complex where they once lived, leaving them alone to catch a bus ride to school. And, there was testimony that the boys, on occasions, fell asleep in class.
¶ 20. Riley v. Doerner, 677 So.2d 740 (Miss.1996), gives us the standard in modification of custody cases that is to be followed by chancellors in considering such a case. Chancellor's are to consider the totality of the circumstances in deciding whether to modify a previous custody decree. Id. at 743. Given the totality of the circumstances in this case, in my opinion, there was more than sufficient grounds to rule that Seth and his brother should have been transferred to the physical custody of their father. Because of the abhorrent conduct of Virginia, not once but three times, creating an environment unfavorable to the rearing of two small boys, it is my opinion that the chancellor should have modified the custody of both children. Both the chancellor and Virginia admitted that such conduct "bothered" or was bad for the children.
¶ 21. Accordingly, for the reasons stated above, I would find that the chancellor erred in determining that a material change in circumstances had not occurred. Even further, I would find that the chancellor erred in failing to award Donald *508 custody of the minor children as it was in their best interests to do so. Thus, I would reverse and render awarding custody of both children to Donald Brown based on a material change in circumstances. Finally, I would reverse and remand for the chancellor to consider matters of child support and visitation.
LEE AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.