MYERS, J.,
for the Court:
¶ 1. Cedric Lewis Richardson filed a petition for modification of child custody and support in the Chancery Court of Tate County, Mississippi. His former wife, Shirley Ann Richardson, had custody of the children and filed a motion to dismiss the petition pursuant to the Uniform Child Jurisdiction Act. The court denied the mo *241 tion to dismiss and held that jurisdiction over this matter would be retained by Tate County. The court also ordered the children to be enrolled and in attendance in the Senatobia, Mississippi public schools until further ordered by the court.
¶ 2. Cedric filed a motion for enforcement of the order and citation of contempt when he became aware that Shirley had enrolled the children in the public schools of Savannah, Georgia in violation of the prior order of the Tate County Chancery Court. In November of 1999 a temporary order was entered holding Shirley Richardson in contempt and granting temporary custody to Cedric. The conflict was taken to trial before the Honorable Melvin McClure. Chancellor McClure granted the modification in favor of Cedric Richardson. Shirley Richardson now appeals that decision.
FACTS
¶ 3. Shirley Ann Richardson and Cedric Lewis Richardson were divorced on June 28, 1995, in Chatham County, Georgia. Shirley was awarded sole permanent legal custody of the minor children, W.R. and C.R. Cedric was to pay three hundred dollars per month as child support. After the divorce, Cedric returned to Mississippi and went to college at the University of Mississippi.
¶ 4. In the summer of 1998 the parties agreed that the two children would come live with their father for one year and attend school in Panola County. Cedric taught seventh grade math and eighth grade pre-algebra in the Panola County school system. During the year in residence with their father, they actually lived in the paternal grandparents’ home along with their father. Many of the actual household duties, including food preparation and washing clothes was done by Cedric’s mother. Cedric testified that the majority of his family and most of Shirley’s lived in Tate County.
¶ 5. In May of 1999, Cedric filed his petition to modify custody and support when he found out Shirley was coming to retrieve the children. He cited as his reason for filing the petition that Shirley had a child by a man that she had been living with for two years. Per their agreement, Cedric and his new wife went to get the children in August 1999 for the upcoming school year. Shirley would not let him see the children.
¶ 6. Cedric Richardson testified on his own behalf at the hearing. He testified that the adverse changes in the children’s circumstances included Shirley’s live-in boyfriend and the new child. He alluded to the abuse of Shirley by the boyfriend. He claimed that Shirley tried to turn the children against him and that she was denying the children the knowledge and relationship with their extended Mississippi family. He then called his new wife, Shunnon Richardson, who testified that she and Cedric started dating in October 1998 and were married in June 1999.
¶ 7. Shirley Richardson was called as Cedric’s last witness. She testified that she lived with her flaneé for two years and they had a child in 1996. She said the relationship ended in the fall of 1998 and that she had not lived with him since then. She and her ex-fiancé have a three-year-old together. She admitted to disobeying the court’s order by enrolling the children in school in Georgia. She denied Cedric’s charges that she interfered with his relationship with the children by hindering phone contact and “turning” the children against him. At the time of trial she was enrolled in school to become an elementary school teacher and she was the assistant manager at the Landing Country Club, making $29,000 per year.
*242 ¶ 8. Shirley Richardson called three witnesses on her behalf. The first was Pamela Jackson, Cedric’s sister. She testified that she believed each parent was a good parent. The second witness was Deborah Dandridge, Cedric’s aunt. She testified that, as a minister, she believed the children should be with their mother. She also testified that the children were ill-behaved when with their father. Shirley’s third witness was her daughter, W.R. W.R. testified that she skipped the third grade and is in sixth grade now. She also testified that she liked the schools in Savannah better than the schools in Mississippi.
DISCUSSION ¶ 9. In reviewing a chancellor’s findings in a domestic matter, this Court has limited discretion. “This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)(quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). “We will not reverse a chancellor’s findings of fact where they are supported by substantial evidence in the record.” Weigand v. Houghton, 730 So.2d 581 (Miss.1999).
[T]he moving party must prove by a preponderance of the evidence that since entry of the judgment of decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by the like evidence that the best interest of the child requires the change of custody.
Ash v. Ash, 622 So.2d 1264, 1265 (Miss. 1993) (quoting Pace v. Owens, 511 So.2d 489, 490 (Miss.1987)).
¶ 10. In this state we follow what is termed the Albright factors. In 1983, Justice Prather enumerated these factors with the polestar consideration being that of the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express preference by law; stability of the home environment and employment of each parent, and other factors relevant to the parent-child relationship.

Id.

¶ 11. The chancellor in the present case adhered to the guidelines that the non-custodial parent must show (1) substantial change in circumstances; (2) change adversely affects the child’s welfare; and (3) that child’s best interest mandates a change in custody. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss. 1997). A mere improvement in the noncustodial parent’s environment and condition, is not enough to warrant a change in custody. Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996). However,
[w]hen the environment provided by the custodial parent is found to be adverse to the child’s best interest, and that the circumstances of the non-custodial parent have changed such that he or *243 she is able to provide an environment more suitable than that of the custodial parent, the chancellor may modify custody accordingly. This must be so, for “in all child custody cases, the polestar consideration is the best interest of the child.” Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994), (other citations omitted).
Riley, 677 So.2d at 744.
The trial court found that Shirley’s live-in boyfriend, their child and her not letting the children speak to their father in person or over the phone were sufficient facts to satisfy the first two prongs of the test.
¶ 12. The court then moved on to an evaluation of the Albright factors to decide custody. In following the factors mentioned above, Chancellor McClure reviewed the testimony of all the witnesses. Regarding the age of the children, if there were any advantage as to the ages of the children they off-set one another as the boy is eight and the girl is ten. The court found that the continuity of care was in the father’s favor because the mother agreed for the children to live and go to school in Senatobia. As to the best parenting skills and emotional ties between the parents and children, he found that both parents were good parents. He also was satisfied that both parents love their children and that there are strong emotional ties among them. Neither parent has an advantage.
¶ 13. The chancellor found in favor of the father in regard to the employment factors and responsibilities of that employment. The father teaches school while the mother works 10:00 p.m. to 6:00 a.m. Tuesday through Saturday and also attends college. As to age of the parents, health of the children, physical and mental health of the parents, nothing stands out to put one parent over another.
¶ 14. The father again wins in the moral fitness department as the mother had a live-in boyfriend for almost three years. Included in his determination was the moral fitness of the environment which looks to extended family. The father lived with his parents until he was married. Since both sides of the children’s extended family are in the father’s community, this factor leans in his favor. In looking into the behavior in school, in the home and in the community the children are doing well. They are getting to know their extended family. This is in the father’s favor. Based on the mother’s moving, her relationship with her live-in boyfriend, and his abuse of her gives the father the favor.
¶ 15. In considering the other factors, the Chancellor did mention the half-sister of W.R and C.R. who would remain in Georgia with the mother. He says the caution not to split siblings would lean in favor of the mother except that she sent W.R. and C.R. to live in Senatobia with their father.
¶ 16. The chancellor must find that the “overall circumstances in which the child lives have materially changed and are likely to remain materially changed for the foreseeable future and ... that such changes adversely impact the child.” Brown v. Brown, 764 So.2d 502, 504 (Miss. Ct.App.2000). In light of Albright and a review of the totality of the circumstances, the best interest of the children was found to be that their custody should be entrusted in their father. We can find no manifest error, no clearly erroneous findings nor any erroneous application of our legal standards. We affirm the modification in custody.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF TATE COUNTY AWARDING PHYSICAL CUSTODY OF MINOR CHILDREN TO APPEL-LEE IS AFFIRMED. ALL COSTS *244 ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE and CHANDLER, JJ., Concur. IRVING, J. Dissents Without Written Opinion.