BARNES, J.,
for the Court:
¶ 1. Ronnie and Jonathan Hardin obtained a divorce on the ground of irreconcilable differences. The Panola County Chancery Court awarded Ronnie primary physical custody of the couple’s minor child. On April 3, 2009, Ronnie filed a petition for modification of custody. Jonathan subsequently filed a counter-petition and a request for a finding of contempt against Ronnie. After a hearing on the petitions was conducted, the chancery court modified its previous order, awarding primary physical child custody to Jonathan. The chancery court also found Ronnie in contempt of various portions of the original custody order. Ronnie appeals. Finding no error in the chancery court’s judgment, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On August 5, 2008, Ronnie and Jonathan obtained a divorce in Panola County, Mississippi, on the ground of irreconcilable differences. The couple had a minor child, a daughter, who was approximately two years old at the time. The Hardins agreed to a “Child Custody and Property Settlement Agreement,” which awarded them joint legal custody and gave Ronnie primary physical custody of the child, with Jonathan having reasonable visitation rights.
¶ 3. On April 3, 2009, Ronnie filed a petition to modify the custody agreement. Jonathan filed a counter-petition for modification and a request for a finding of contempt against Ronnie. A hearing was held on the petitions on March 2, 2010. The parties stipulated that there was a material change in circumstances that had
*751 adversely affected the child;[1] therefore, the chancellor proceeded with her review of the record to determine what was in the best interest of the child. See Robinson v. Brown, 58 So.3d 38, 42-43 (¶ 12) (Miss.Ct.App.2011) (Upon a finding of a material change in circumstances, the court must determine what is in the best interest of the child using the Albright factors.).[2]
¶ 4. On May 19, 2010, the chancery court modified its previous custody order and granted primary physical custody to Jonathan, with Ronnie having reasonable visitation rights. The chancellor found Ronnie in contempt of court for her failure to abide by terms of the original court order. Ronnie appeals the chancellor’s judgment. Finding no error in the chancery court’s modification of custody and findings of contempt against Ronnie, we affirm.
I. Whether the chancery court erroneously found Ronnie in contempt of court for violating various portions of the child custody and property-settlement agreement.[3]
¶ 5. The chancellor found Ronnie to be in contempt for failure to abide by several requirements of the chancery court’s original order, and Jonathan was awarded a judgment of $4,800 as a result of one of the violations. However, the chancellor suspended any imposition of penalty if Ronnie paid Jonathan $100 per month toward the judgment owed to him, plus accrued interest, until satisfied.
¶ 6. Contempt matters are within the sound discretion of the chancellor and will not be reversed if “supported by substantial credible evidence.” Weston v. Mounts, 789 So.2d 822, 826 (¶ 17) (Miss.Ct.App.2001) (citing Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss.1991)). If a “contem-ner has willfully and deliberately ignored the order of the court[,]” then a citation for contempt is appropriate. Id. at 826-27 (¶ 17) (citation omitted).

A. Whether the child resided with Ronnie’s parents in violation of the court’s order.

¶ 7. The original custody and property-settlement agreement stated: “The husband and wife agree that it is in the best interest of the minor child not to reside in the home of either or both of the maternal grandparents.” Two days after the divorce, Ronnie moved from Panola County to south Mississippi.[4] The record reflects that during this period, Ronnie and the child stayed with .Ronnie’s parents for one week on two separate occasions. In her petition for modification, Ronnie requested that this clause be stricken from the custody agreement.
¶ 8. The chancellor found Ronnie to be in contempt of this clause contained in the •original order, noting that although the time spent at her parents’ home was brief, Ronnie and the child had no other residence during those periods. Therefore, the chancellor concluded that the child “lived” at the grandparents’ home during those periods. Ronnie does not dispute that she and her daughter stayed at her parents’ home for those periods and that *752 she moved some of the child’s furniture there permanently for future visits.
¶ 9. In Johnson v. Preferred Risk Automobile Ins. Co., 659 So.2d 866, 872 (Miss.1995), the Mississippi Supreme Court addressed the issue of what constitutes a “resident” as it applied to an automobile policy. In Johnson, the supreme court reviewed whether the Johnsons, who were both injured while temporarily residing at their respective parents’ homes before moving to a new home, could be considered residents of the two parental households for purposes of uninsured-motorist coverage under the parents’ policies. The supreme court observed:
“Resident” has no technical or fixed meaning; the term is “flexible, elastic, slippery, and somewhat ambiguous.” 77 C.J.S. Resident at 305 (1952). The term “has an evasive way about it, with as many colors as Joseph’s coat.” Weible v. United States, 244 F.2d 158, 163 (9th Cir.1957).
The two concepts most often discussed in defining “resident” are 1) presence; and 2) an intent to remain for some time. However, there is no fixed formula for determining how much of any factor (presence, intent, or time) is required:
It has been said that the word “resident” is generally understood to mean one having more than a mere physical presence, and that the transient visit of a person for a time to a place does not make him a resident while there. It has also been said that the term imports a fixed abode for the time being, as contradistinguished from a place of temporary abode, and that in order to entitle one to the character of a resident there must be a settled fixed abode, and an intention to remain permanently, or at least for some time, for business or other purposes. On the other hand, it has been stated that living in a particular locality is sufficient for becoming a resident of it, and that the term “resident” may be used in the strict primary sense of one actually living in a place for a time, irrespective of domicile, and that it may refer to a temporary sojourner, as well as to one possessing a legal domicile. 77 C.J.S. Resident at 306.
Johnson, 659 So.2d at 872. The supreme court concluded that the Johnsons were residents and covered under their parents’ policies, even though the couple only intended to stay with their parents for a couple of weeks. Id. at 875. Similarly, Ronnie and the child resided at her parents’ home before moving into another home; therefore, based on the reasoning in Johnson, they could be considered residents during those brief periods.
¶ 10. Accordingly, we find that there was credible evidence that Ronnie violated the court’s order by allowing the child to reside with the maternal grandparents for the two weeks in question. This issue is without merit.

B. Whether Ronnie’s enrollment of the child in a government healthcare insurance program violated the custody agreement.

¶ 11. The original custody agreement also stated that Ronnie was “to maintain health, medical, dental, and optical insurance of the parties’ minor child.” The chancery court found Ronnie in contempt of this clause as Ronnie had enrolled the child in the Mississippi Children’s Health Insurance Program (CHIPS).[5] *753 Ronnie contends in her brief that she provided insurance for her child through her employer until she lost her job in August 2008, when she obtained insurance through CHIPS. Ronnie argues that she was in compliance with the order that she “maintain” insurance, even though she was not actually paying for the insurance.
¶ 12. The term “maintain” is defined as “to keep in existence or continuance” or “to provide for the upkeep or support of; carry the expense of.” Random House Webster’s Unabridged Dictionary 1160 (2d ed. 2001). Ronnie enrolled the child in CHIPS in August 2008, but she did not lose her job with Regions Bank until March 2009. Ronnie even testified at the hearing as follows:
Up until August 2008, I carried her on my insurance through the bank that I was working at. And I realized that I was qualified to put her on Medicaid, according to my income at that time. And in August 2008, she was put on Medicaid, and has been on Medicaid, since then.
Thus, this was not a situation where Ronnie was attempting to obtain insurance for her daughter after losing her job. Rather, as the chancellor noted, Ronnie made a conscious decision to cancel the child’s insurance through Regions Bank and place her in the CHIPS program. As such, Ronnie was not “carrying the expense” for the child’s insurance. Based on these facts, we cannot find an abuse of discretion in the chancellor’s finding of contempt on this issue.

C. Whether Ronnie violated the court’s order by failing to pay the debt owed on her 2004. GMC Envoy.

¶ 13. The chancellor also found Ronnie to be in contempt of the clause in the order that required Ronnie to satisfy the indebtedness owed on her 2004 GMC Envoy and to hold harmless Jonathan from any indebtedness. Ronnie wrecked the vehicle in January 2009 and received insurance reimbursement, which left a deficit of approximately $4,200 on the loan. Ronnie claims that she was not given the opportunity to make alternative arrangements to repay the debt as Jonathan quickly paid the remaining balance. Ronnie claims that Jonathan did not consult her prior to doing so; however, Jonathan testified that Ronnie told him she could not pay it, and he should do “whatever [he] had to do.”
¶ 14. Ronnie was employed with Regions Bank, the holder of the vehicle’s lien, when the vehicle was damaged; however, Ronnie was fired from Regions in March 2009. Ronnie testified that she had received a two-month extension to pay the loan, but Jonathan paid the loan prior to the termination of the extension. Jonathan stated that since his name was still on the loan, he was concerned about his credit rating if the loan went into default, so he borrowed money to repay the balance remaining. Ronnie admitted in her testimony that she knew that Jonathan might have lost his job if the loan had not been paid.
¶ 15. The chancellor’s finding of contempt is supported by the evidence.. Ronnie willfully violated the court’s order to repay the indebtedness on the loan. This is evidenced by Ronnie’s statement to Jonathan that she did not have the money to pay the loan and that he should do “whatever,” which showed an apparent lack of concern to make any payment toward the *754 debt, even when she was employed by Regions.[6] Therefore, we find no merit to this assignment of error.
II. Whether the chancellor erred in modifying the custody agreement and awarding primary physical custody to Jonathan.
¶ 16. A chancellor’s findings of fact regarding the modification of custody will not be disturbed on appeal unless the chancellor’s judgment is “manifestly wrong, clearly erroneous, or the proper legal standard was not applied.” Sullivan v. Beason, 37 So.3d 706, 707-08 (¶ 7) (Miss.Ct.App.2010) (citing Duke v. Elmore, 956 So.2d 244, 247 (¶6) (Miss.Ct.App.2006)).
¶ 17. As the parties stipulated to a material change in circumstances, the chancery court properly proceeded to made an on-the-record detailed application of the Albright factors in determining that a modification in custody was warranted. Ronnie contends that the chancellor improperly conducted the analysis, and “the analysis as a whole was against the overwhelming weight of the evidence and failed to achieve that which is in the child’s best interest.” The chancellor went through each factor in making her determination; however, we will only address those factors cited by Ronnie as constituting error.

A. Continuity of Care Prior to Separation

¶ 18. The chancellor determined that this factor favored neither party. Ronnie, noting that our appellate courts have also considered post-separation continuity of care, argues that she is the primary caregiver when the child is with her, while Jonathan relies on a various group of individuals to assist him with child care; thus, the child is continuously moving between homes and day care when staying with Jonathan. We find no merit to Ronnie’s argument. The record shows that both parents attempted to split their time with the child equally after the divorce, which the chancellor noted was a decision that the two of them had made. We find no error regarding the chancellor’s finding as to this factor.

B. Parenting Skills

¶ 19. The chancellor found that this factor favored neither parent. However, Ronnie contends that this factor should have favored her as she provides more care for the child, unlike Jonathan, whom she argues “shuffles the child around to whoever can sit with her.” She also takes issue with the chancellor’s observations regarding her placing the child in the CHIPS program and Jonathan’s willingness to provide insurance without being ordered to do so. She claims that the remarks placed more weight in Jonathan’s favor and was erroneous.
¶ 20. The argument regarding the care of the child was already addressed by the chancellor and found to be equal. The record reflects Jonathan’s attempting to provide care for the child and maintain full-time employment; therefore, we cannot find that Jonathan’s allowing the child to be looked after by his parents, his fiancee, or a day care necessarily diminishes his parenting skills. The record shows that he fixed meals for the child and took her to church when she was visiting. Also, we must agree with Jonathan that the chancellor’s observation regarding the *755 child’s insurance was not enough to place this factor in his favor. Therefore, we find no error in the chancellor’s finding on this factor.

C.Moral Fitness

¶21. Again, the chancery court found this factor favored neither parent. Ronnie claims that she should have been favored as Jonathan lives with his nineteen-year-old fiancee. The chancellor acknowledged Ronnie’s issue with Jonathan’s live-in fiancee, and she agreed that this fact did not put Jonathan “way up here on the top of the morality totem pole.” However, along with this fact, the chancellor also weighed the fact that Ronnie was fired from her job at Regions for the illegal activity of investigating her ex-husband’s financial activities. Ronnie argues that since her illegal activity was not committed in the presence of the child, it is irrelevant. We disagree, finding this behavior extremely relevant to the issue of Ronnie’s morality. Furthermore, there is nothing in the case law that says if a parent behaves immorally, it need not be considered by the chancellor as long it is not committed in the presence of the child. The chancellor also noted that Jonathan and his fiancee regularly took the child to church. We find that the chancellor committed no error in her analysis of this factor.

D.Home, School and Community Record

¶ 22. The chancery court found that both parents were “pretty much equal” in this category but did acknowledge that: “If it favors anyone, it would favor the Dad, slightly.” Ronnie characterizes this statement as Jonathan “prevailing” on this issue and claims that' the chancellor “errantly allow[ed] the decision on this issue to be swayed by the fact that Jonathan hasn’t moved since the child was born.” Ronnie reiterates her claim that the child is constantly staying with others during Jonathan’s visitation time; as such, she should be favored as she provides a more stable routine for the child.
¶ 23. The. chancellor understood that since the child was young and not of school age, there was little to consider regarding this factor. However, the record supports the chancery court’s findings that the mother “has not shown consistency” by moving several times since the divorce, whereas Jonathan has remained in the same home. She also noted Jonathan’s testimony that they had regular family meals and attended church with the child. Accordingly, we find no error in the chancellor’s analysis of this factor.

E.Stability of Home Environment and Employment of Each Parent

¶ 24. The chancellor found that this factor weighed heavily in favor of Jonathan, citing again the child’s stable routine when she is with Jonathan and the fact that Ronnie had moved residences several times. She also noted Ronnie’s testimony that the child is “upset or seems out of sorts” when she comes back to stay with Ronnie.
¶ 25. Ronnie persists with her argument regarding Jonathan’s live-in fiancee, contending that this fact shows Jonathan’s home does not provide a stable environment for the child. She also claims that she has steady employment and is furthering her education. Jonathan argues that the facts support the chancellor’s conclusions. He observes that Ronnie not only moved several times in the nineteen months between the divorce and the chancellor’s modification, but she also has had three different jobs. Jonathan has remained in the same home and been employed by the same company.
*756 ¶ 26. Ronnie cites to Richardson v. Richardson, 790 So.2d 239 (Miss.Ct.App.2001) to support her argument that Jonathan’s cohabitation with his fiancee should have prevented him from being favored in regard to this factor. However, as Jonathan argues, Richardson was distinguishable as the mother’s live-in fiancé in that case was abusive. There is no question that the chancellor duly recognized Jonathan’s cohabitation with his fiancee. However, this Court has held that “cohabitation is relevant to a determination of a change in custody only to the extent it is shown such a relationship adversely affects the child.” Pruett v. Prinz, 979 So.2d 745, 750 (¶ 19) (Miss.Ct.App.2008) (citing Sullivan v. Stringer, 736 So.2d 514, 517 (¶ 16) (Miss.Ct.App.1999)). As we observed in Richardson, the “totality of the circumstances” must be considered to determine what is in the best interest of the child. Richardson, 790 So.2d. at 243 (¶ 16).
¶ 27. Testimony showed that at Jonathan’s' home, the child experienced regular family meal times, went to bed at a regular time — complete with bedtime stories and prayers — , and attended church during her visitation with Jonathan. The chancellor considered Jonathan’s cohabitation, yet she gave more weight to the stable and structured home environment attested to by Jonathan and his fiancee and to the fact that Ronnie had not shown the same level of stability. Affording discretion to the chancellor’s findings, we find credible evidence to support the evaluation of this factor and find this issue without merit.
¶ 28. Based on our review, we find no error in the chancery court’s modification of the custody order and findings of contempt against Ronnie. Accordingly, we affirm the chancellor’s judgment.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. See McNair v. Clark, 961 So.2d 73, 79 (¶ 22) (Miss.Ct.App.2007) (stipulation as to a material change in circumstances would be considered binding as between the parties).

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. Ronnie appeals all but one of the chancellor’s findings of contempt. Ronnie does not contest the chancellor’s finding her in contempt for failing to notify Jonathan of her current address in writing.

. Both parties were aware when the divorce decree was entered that Ronnie was moving.

. Jonathan argues that the child was actually enrolled in the Mississippi Medicaid program. We find this distinction irrelevant to this discussion, noting that CHIPS is a division of Medicaid. We also observe that when Jonathan discovered that the child was enrolled in *753 the CHIPS program, he put the child on his employee insurance plan, although he was not required to do so by the court.

. Ronnie does not argue on appeal that she had an inability to pay; moreover, Ronnie failed to provide any particular information to the chancery court showing an inability to pay. See Seghini v. Seghini, 42 So.3d 635, 643 (¶ 30) (Miss.Ct.App.2010) (holding a defendant's inability to pay must be shown "with particularity and not in general terms”) (citing Clements v. Young, 481 So.2d 263, 271 (Miss.1985)).