## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CA-01245-SCT

*STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY*

*v.*

*PERRY McGEE, ROBERT JACOB McGEE, A MINOR, BY AND THROUGH HIS FATHER AND NATURAL GUARDIAN, HARLON McGEE AND HARLON McGEE, INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/13/1998 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL F. MYERS |
| ATTORNEYS FOR APPELLEES: | CALVIN C. WILLIAMS, JR. |
| | W. E. STRACENER, JR. |
| | H. GRAY LAIRD, III |
| | JAMES D. HOLLAND |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 11/24/1999 |
| MOTION FOR REHEARING FILED: | 12/23/99; denied 6/8/2000 |
| MANDATE ISSUED: | 6/15/2000 |

### EN BANC.

### McRAE, JUSTICE, FOR THE COURT:

¶1. The case presently before this Court arises out of an automobile accident which occurred on April 3, 1996, when Robert Jacob McGee ["Jacob"] was driving his stepfather's ["Casey"] vehicle. Jacob's cousin Perry McGee ["Perry"] was a passenger in the car and was injured. Perry filed suit on January 18, 1997, in Attala County Circuit Court against Harlon McGee, Jacob's natural father ("Harlon"), and Jacob alleging negligence by Jacob and imputing such to Harlon pursuant to Miss. Code Ann. § 63-1-25 (1996).[1]

¶2. During the time at issue, Harlon had an effective insurance policy with State Farm Mutual Automobile Insurance Company ["State Farm"] covering his 1983 Chevrolet truck, which was not involved in the accident. Pursuant to the policy, State Farm undertook the defense of both Harlon and Jacob by filing answers on behalf of both denying liability but reserving the right to deny such coverage existed. On April 2, 1997, State Farm filed a Complaint for Declaratory Judgment in this separate action against Perry, Harlon, and Jacob, by and through his father and natural guardian, Harlon McGee, seeking a declaratory judgment that there was no coverage for the accident under its policy with Harlon.

¶3. State Farm filed a Motion for Summary Judgment in the declaratory action on January 8, 1998. On February 17, 1998, Perry, Jacob, and Harlon filed Defendant's Response to Plaintiff's Motion for Summary Judgment as well as a Memorandum Brief in Opposition to State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment. In such documents, Perry, Jacob, and Harlon argued there were genuine issues of material fact. In its March 5, 1998, Order Denying Summary Judgment, the circuit court found the policy term "same household" ambiguous. The court denied summary judgment to State Farm and further stated that, if there were no additional facts to be reported to the court, State Farm was not entitled to a declaratory judgment. State Farm filed nothing further, and the case was dismissed. Aggrieved at the court's finding, State Farm appeals to this Court.

¶4. Pursuant to [Rule 57(a) of the M.R.C.P.](), "The court may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Having reviewed the facts of the case and the existing law pertaining to declaratory actions, we find that the trial court did not abuse its discretion. State Farm has already reserved its rights and is defending the original case on the merits. See *Clark v. City of Pascagoula*, 507 So.2d 70 (Miss. 1987) and *Hunt v. Preferred Risk Mut. Ins. Co.*, 568 So.2d 253 (Miss.1990) which have been construed as precluding a third party from bringing substantive claims against an insurer in a Rule 57 action.

¶5. We therefore affirm the judgment of the trial court.

¶6. **JUDGMENT IS AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS AND WALLER, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. WALLER, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, McRAE, MILLS AND COBB, JJ. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J.**

## WALLER, JUSTICE, SPECIALLY CONCURRING:

¶7. I agree with the majority opinion that the lower court was correct in declining to enter a declaratory judgment. But I would go further: the lower court was correct in finding that Jake McGee was driving an non-owned vehicle under Harlon McGee's policy, and declaratory relief was therefore inappropriate.

¶8. Harlon is the named insured under an automobile liability insurance policy issued by State Farm. Jake, his son and an unemancipated minor, lives with him most of the year and is an insured under the policy because he is Harlon's relative and lives in Harlon's house. Jake resides with his mother and stepfather, Casey Sanders, for visitation at various times throughout the year. When Jake resides with Casey and his mother, Casey allows Jake to drive a truck owned by Casey.

¶9. If Jake drove a vehicle that was not listed on Harlon's policy, he would be insured under the policy if he could show that the vehicle was not owned by Harlon - a "not-owned" vehicle. If the vehicle was owned by Harlon but not listed on the policy, the car would not be a "not-owned" vehicle, and Jake would not be insured.

¶10. State Farm argues that when Jake is driving Casey's truck, a vehicle obviously not listed on Harlon's policy because it is not Harlon's truck, he is not insured because Casey's truck is not a "not-owned" vehicle. In other words, Casey's truck is a vehicle owned by a member of Harlon's household which is not listed on Harlon's policy and, therefore, not covered.

¶11. State Farm's argument is disingenuous at best. To find that Casey's truck is a "non-owned" vehicle, the Court would have to hold that Harlon's household is expanded to include anyone with whom Harlon's spouse or relatives might periodically reside.

¶12. Common sense dictates that the insured's "household" includes the insured, the insured's spouse, **if** the spouse is living with or dependent upon the insured, and the insured's relatives, **if** they are living with or dependent upon the insured. Jake is an insured under the policy because he is Harlon's son **and** because he lives under the same roof as Harlon. A person who does not live with or is not dependent upon Harlon does not become a member of Harlon's household merely because Harlon's son might temporarily reside with him and drive his vehicle.

¶13. While there is no statute that defines the word "household" for purposes of automobile liability coverage, we feel our logic is borne out by the statutory language used in Miss. Code Ann. § 83-11-103(b) (1999) (uninsured motorist coverage): "The term 'insured' shall mean the named insured and, **while a resident of the same household**, the spouse of any such named insured and relatives of either . . . ." (Emphasis added.)

¶14. Under Mississippi law, an unemancipated minor is a member of two households when his parents are living separately. *See **Aetna Cas. & Sur. Co. v. Williams***, 623 So. 2d 1005, 1011 (Miss. 1993). However, just because the minor is a member of two households does not mean that the other members of those two households are members of both or that the two households become one.

## BANKS, McRAE, MILLS AND COBB, JJ., JOIN THIS OPINION.

## PRATHER, CHIEF JUSTICE, DISSENTING:

¶15. I respectfully dissent. All parties and the trial judge agree that the relevant issue in the present case is whether the truck in the present case was a "non-owned car" under the terms of the State Farm liability policy at issue in the present case. Jacob McGee is the unemancipated minor son of Harlon McGee and Susan Sanders, who are divorced. Harlon McGee has primary custody of Jacob, but Jacob also visits with his mother, and maintains residences with his mother and stepfather, Casey Sanders, as well as with his natural father, Harlon McGee.

¶16. On August 3, 1996, Jacob was the driver of a vehicle owned by his stepfather (Sanders) when the vehicle was involved in an accident. Jacob's cousin, Perry McGee, was a passenger in the vehicle at the time of the accident. Perry McGee brought suit against Jacob for his alleged negligence in driving the truck. Perry also brought suit against Harlon McGee (the named insured under a State Farm liability policy) alleging that he had signed his son's driver's license and was accordingly vicariously liable pursuant to Miss. Code. Ann. § 63-1-25. Although Harlon maintained an automobile liability policy with State Farm covering his own 1983 Chevrolet vehicle (which was not involved in the accident), the truck owned by Sanders was not listed as an insured vehicle under that policy.

¶17. State Farm defended Jacob and Harlon McGee in the negligence action under a reservation of rights, reserving its defense that Casey Sanders' truck was not an insured vehicle under Harlon McGee's liability policy. State Farm filed a complaint for a declaratory judgment in this separate action, alleging that there was no coverage under its policy and seeking a judgment declaring that it had no duty to defend or indemnify Jacob or Harlon in the negligence action filed by Perry McGee. The trial court refused to grant this declaratory judgment and dismissed State Farm's complaint, finding that there was an ambiguity in the State Farm policy regarding the term "household." State Farm appeals from this ruling by the trial court.

¶18. In order to be entitled to recover under Harlon McGee's liability policy, Perry must establish that Casey Sanders' truck did in fact meet the definition of a "non-owned car" under Harlon's policy. Harlon's State Farm policy defines a "non-owned car" as follows:

> Non-Owned Car - - means a car not owned, registered or leased by:
>
> 1. You, your spouse;
>
> 2. Any relative unless at the time of the accident or loss:
>
> a. the car is or has been described on the declarations page of liability policy with within the preceding 30 days; and
>
> b. you, your spouse or a relative who does not own or lease such car is the driver.
>
> 3. Any other person residing in the same household as you, your spouse, or any relative; or
>
> 4. An employer of you, your spouse, or any relative.

The term "non-owned" automobile is a term of art which is found in the standard automobile liability policy. *See*: David D. O'Donnell & S. Duke Goza, Mississippi Automobile Insurance Law and Practice, § 8-5, at 86-88 (1997). There is no statutory definition of "non-owned" automobile, and this Court must instead look to the language of the policy, considered in the context of this Court's established precedent.

¶19. In the present case, the trial judge's ruling initially made all the proper findings. The ruling initially found that, in order for Jacob to recover under his father's policy for the accident involving his stepfather's truck, it must be established that the truck is a "non-owned car" within the definition in Harlon's policy.[2] It is clear that Jacob McGee was at all relevant times a "relative" of his father, Harlon. Accordingly, the policy provides that Casey Sanders' truck qualified as a "non-owned car" only if the truck was not "owned, registered or leased by ... any other person residing in the same household" as Jacob.

¶20. The trial judge's ruling correctly narrowed the issues in the present case to the following: whether Jacob and his stepfather (Sanders) are residents of the same household. Moreover, the trial judge correctly noted that this Court held in *Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005 (Miss. 1993), that an unemancipated minor, such as Jacob, is a resident of both of his parents' households as a matter of law. Furthermore, the trial judge noted in his ruling that Jacob and Harlon had admitted in discovery that "Jacob was a resident of both his mother and father's house."

¶21. It is at this point that the trial judge's analysis should have ended, and summary judgment in favor of State Farm should have been entered. However, in spite of correctly finding in favor of State Farm on the

residency issue, the trial judge drew a distinction between the term "house" and "household," finding that:

> Unfortunately, the resolution of the residency issue does not resolve the coverage issue. ... If (Harlon McGee) had read page three of the policy, he would have seen that a non-owned car was a car not owned by him or any other person residing in the same household as him or any relative. Since there is no definition of the term "same household" and no language in the policy that would inform him that the child of whom he had legal custody could have a household other than his own, he could have logically interpreted that phrase to mean his immediate household. In fact, prior to September 2, 1993, when *Aetna v. Willliams* was decided it would have meant that. The policy in question was issued in 1994, so State Farm if it had desired could have included a definition that defined the insured minor's residence as that of both parents and thereby specifically informing Harlon of the exclusion. State Farm chose not to do so. The Court finds that the term "same household" with no further definition in the policy is ambiguous and subject to two interpretations."

The trial judge thus found it "easily resolved" that Jacob was a resident of his stepfather's "house" but nevertheless concluded that they were not members of the same "household." It is not at all clear exactly how Jacob could, by his own admission, be a resident of the same "house" as his stepfather, but not a resident of the same "household."

¶22. Moreover, while noting that the policy is silent as to the term "household," the trial judge's ruling ignores the fact that this Court provided a definition of "residency" in *Williams* which expressly incorporated the term "household." This Court held in that case that:

> A non-custodial parent is just as much a "parent" as a custodial parent and the child is still a member of the non-custodial parent's family. Consequently, the child is still a "resident" in the household of the non-custodial parent. We hold, therefore, that a child is a resident of both parents' *households* until he or she reaches the age of majority or becomes fully emancipated.

*Williams*, 623 So.2d at 1011 (emphasis added). This Court's holding in *Williams* thus clearly provides that an unemancipated minor is a member of both parents' households, and there is nothing in the language of the holding limiting it to uninsured motorist (UM) cases. Indeed, uninsured motorist coverage is generally issued as a part of the same contract as liability coverage, and it would clearly be unfair to establish one, insured-friendly definition of "residency" applicable to the UM portion of a contract and establish a completely different definition within the same contract, when such would be helpful to the insured.

¶23. Indeed, in analyzing this Court's discussion of the meaning of "residency" in an uninsured motorist context, two commentators have expressed their view that the principles announced in the UM context "apply with equal force in the liability coverage context." *See*: O'Donnell & Goza, § 9-4, at 96 n. 8. This Court would not hesitate to find that Jacob was a "resident" of his stepfather's "household" if he came before this Court seeking UM benefits pursuant to the terms of a UM policy issued to his stepfather (or some other resident of his stepfather's household.) This Court's holding in *Williams* would dictate this result. This Court has elected to define the term "residence" broadly, but we should not set forth differing definitions of the same term within the same contract depending upon which litigant is adversely impacted thereby.

¶24. I would reverse the trial court and render judgment in favor of State Farm. I accordingly dissent.

**SMITH, J., JOINS THIS OPINION.**

1. Miss. Code Ann. § 63-1-25 (1996) allows for the imputation of negligence or wilful misconduct of a driver under seventeen years of age to the person signing the minor's application for license.

2. The trial court correctly found that the car was clearly not a "temporary substitute" or "newly acquired" car within the policy definitions.