# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-00553-SCT

*MISSISSIPPI FARM BUREAU MUTUAL*
*INSURANCE COMPANY*

*v.*

*SHIRLEY WALTERS AND CYNTHIA L. GUY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2003 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | W. SHAN THOMPSON |
| | JAMES R. MOORE, JR. |
| ATTORNEYS FOR APPELLEES: | THOMAS T. BUCHANAN |
| | SAMUEL STEVEN McHARD |
| | ERICA RENEE McHARD |
| | TIMOTHY J. EVANS |
| | JAMES ROBERT SULLIVAN, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 08/18/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This interlocutory appeal arises from Farm Bureau's trial court complaint for a declaration as to whether an insurance policy provides liability coverage for bodily injury claims brought by one insured against another insured for the death of a third insured.   On summary judgment motion, the Jones County Chancery Court found that the policy issued to Cynthia Guy and her mother, Shirley Walters, provided liability coverage to Walters for the wrongful death claims asserted against her by Guy.   In finding that Walters' and Guy's policy

provided coverage, the chancellor held the household exclusion did not apply and that William Guy was not an "insured" under the Farm Bureau policy. Farm Bureau sought reconsideration and when denied it requested authority to petition this Court for an interlocutory appeal. We granted permission to bring this appeal. *See* M.R.A.P. 5.

¶2.    We find that the term "household" is not ambiguous and that William Guy as Cynthia Guy's spouse is an insured under the contract and thus the household exclusion applies. The chancellor erred in not granting Farm Bureau summary judgment. We reverse and render.

## FACTS AND PROCEEDINGS

¶3.    This case arises from claims involving the wrongful death of William Guy. William died on August 14, 2001, as a result of an occurrence at Walters' "residence premises" located at 3256 Ovett-Moselle Road, Ovett, Mississippi, on August 13, 2001. William was shot in the back and died thirty hours later. Farm Bureau had issued a Manufactured Home Policy covering the Walters' residence premises, which was in effect at the time of William's injury and death.

¶4.    On October 5, 2001, Farm Bureau interviewed Walters, and she admitted that William's death was "her fault" because she failed to warn him of the imminent danger of gunfire and violence at her home. Walters met with Farm Bureau agent Jason Mills and admitted the following:

> (1)    Walters' son, Jack Shoemaker, was mentally disabled and had been prescribed Lithium, Prozac and Elavil for his mental problems.
>
> (2)    Walters knew Jason Creel had riddled Jack's car with bullets at her home on Friday, August 10, 2001, and had beaten and threatened to kill Jack during an early morning fight on August 13, 2001.

2

(3)     As a result of that fight, Jack was bloody, irate, and threatening to kill Creel, who was also threatening to get a gun and kill him.

(4)     Walters called William to take Jack to the doctor because Jack was upset, but she did not tell William about the life-threatening conditions present the Walters' property.

(5)     Walters admitted to Farm Bureau that she was the reason William was dead and stated "if I had not called him to come, or if I had told him of the guns involved he would not have come and he would be alive today."

Cynthia Guy filed a wrongful death claim with Farm Bureau against her mother. Walters requested that Farm Bureau provide coverage and a defense. On November 26, 2001, Farm Bureau issued a denial of coverage letter to Walters. The denial stated in part that "we have concluded that the Farm Bureau Policy did not provide coverage for the claims alleged or a duty to defend you." On April 15, 2002, Cynthia offered to settle the claim within the Farm Bureau policy limits. Farm Bureau rejected this offer and alleged that there was no coverage under the Farm Bureau policy.

¶5.     On May 20, 2002, Farm Bureau filed a complaint for declaratory relief seeking a determination that it had no duty to defend or to indemnify Walters. Farm Bureau also sought a declaration stating that it was not required to provide coverage for the Guy claim. Guy and Walters each filed a counterclaim asserting Farm Bureau's breach of duty to defend, indemnify and Farm Bureau's failure to provide coverage. Additionally, Guy filed a cross-claim against Walters for wrongful death.

¶6.     In her claim Guy alleged that Walters negligently invited William to her residence to calm Jack down and take him to the doctor. William had gone to the Walters' home to help Jack on previous occasions. On this occasion, Jack had recently been beaten up by a neighbor

named Jason Creel. Guy also alleged that Walters did not warn William about the recent drive-by-shootings, physical beatings, and possession of loaded rifles with threats and intent to kill. However, there is some evidence to the contrary.

¶7. On May 6, 2003, Guy's cross-claim against Walters was severed from the underlying declaratory judgment action without objection by Farm Bureau. After severance, Cynthia and Walters announced a Mary Carter agreement in which Walters admitted liability for the death of William. On May 7, 2003, based on evidence presented at trial, the chancellor found Walters seventy-five percent at fault for damages of $3.6 million. The court then entered a judgment for $2.7 million against Walters. Farm Bureau moved for summary judgment on its declaratory action, and Guy and Walters moved for partial summary judgment on their counterclaims.

¶8. After a review of the pleadings, depositions, admissions, and affidavits on file, the chancellor entered his conclusions of law finding that the household exclusion did not apply and thus William was *not* an insured under the policy. Farm Bureau moved the trial court to reconsider its ruling, or in the alternative, to certify the action for interlocutory appeal. The chancellor denied the motion for reconsideration, but granted the certification for interlocutory appeal. In tern, we granted permission to bring this appeal. Farm Bureau raises these issues on appeal:

> **I.** **Does Farm Bureau's Policy Provide Coverage for the Wrongful Death Claim Against Walters?**
>
> **II.** **Does the "Severability of Interest" Clause Abrogate the "Household" Exclusion?**

**III.    Did the Trial Court Err When it Considered Facts Outside of the Policy?**

## STANDARD OF REVIEW

¶9.    This Court has consistently held that review for summary judgment is de novo. *Hurdle v. Holloway*, 848 So.2d 183, 185 (Miss. 2003); *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000); *Crain v. Cleveland Lodge 1532*, 641 So.2d 1186, 1188 (Miss. 1994).   A summary judgment motion is only properly granted when no genuine issue of material fact exists.   *Id.* at 304; Miss. R. Civ. P. 56(c).   The moving party has the burden of demonstrating that no genuine issue of material fact exists within the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."   *Id.*; *see also Davis v. Hoss*, 869 So.2d 397, 401 (Miss. 2004) (noting that the court should review all evidence available to it when making its decision); *Anglado v. Leaf Forest Prods., Inc.*, 716 So.2d 543, 547 (Miss. 1998).   The trial court must review all evidentiary matters before it in the light most favorable to the non-moving party.   *Hoss,* 869 So.2d at 401; *Martin v. Simmons*, 571 So.2d 254, 258 (Miss. 1990).   This Court must reverse for any erroneous interpretations or applications of law.   *Miss. Transp. Comm'n v. Fires*, 693 So.2d 917, 920 (Miss. 1997). Finally, this Court has held that the tool of summary judgment is a powerful one and should be used sparingly. *Martin*, 571 So.2d at 258.

## ANALYSIS

**I.    Does Farm Bureau's Policy Provide Coverage for the Wrongful Death Claim Against Walters?**

¶10.    This Court has held that "a policy should be drafted to accommodate the average person who will give its terms a general reading." **Burton v. Choctaw County**, 730 So.2d 1, 9 ¶ 35 (Miss. 1997). However, accommodation through a general reading should not permit either party to exceed the intent or expectations with which both parties entered the contract.

¶11.    We must first determine whether the policy is ambiguous.    Ambiguity, in its simplest form, is the state of having multiple interpretations.    This Court refined the application of ambiguity to instances where an alternate interpretation must be "reasonable." **J&W Foods Corp. v. State Farm Mut. Auto Ins. Co.**, 23 So.2d 550, 552 (Miss. 1998) (holding that ambiguity "should be based upon what a *reasonable person* placed in the insured's position would have understood the terms to mean.") (emphasis added).

¶12.    This Court has noted that internal conflict or uncertainty can provide the necessary condition precedent to find ambiguity.    **Crum v. Johnson**, 809 So.2d 663, 666 ¶ 8 (Miss. 2002).    For instance, if one section of a policy conflicts with another, the inherent uncertainty within the policy creates an obscurity and thus ambiguity.    **Id.**    This step of the analysis is important because the contract must be viewed as a whole.    **Continental Cas. Co. v. Pierce**, 170 Miss. 67, 154 So. 279, 281 (1934).    All parts must be harmonized as much as reasonably possible, and no part or word can be stricken unless the result is fairly inescapable.    **Id**.

¶13.    We have also recognized that "intent" is an important consideration when interpreting policy provisions.    This Court has noted that it must "inquire [into] what the parties [] meant. Practical considerations must be given play, interpreted in the light of the purpose of the policy provision." **Fleming v. Travelers Ins. Co.,** 206 Miss. 284, 39 So.2d 885, 887 (1949).

Reviewing the intent and expectations of the parties is necessary considering the policy implications of allowing insurance companies to set their own interpretations because of the unique dynamic of disparate bargaining power between insurance companies and consumers.

¶14.    Ambiguity however, can not be forced into a policy where there is none.  This Court has held that it will not rewrite or deem a contract ambiguous where the language is clear and indicative of its contents.  *State Auto. Mut. Ins. Co. v. Glover*, Miss. 477, 176, 253 So.2d 256, 258 (1965).  If no ambiguity exists, then the contract should be enforced as written.  *Miss. Farm Bureau Mut. Ins. Co. v. Jones*, 754 So.2d 1203, 1204 (Miss. 2000); *Gulf Guar. Life Ins. v. Duett*, 671 So.2d 1305, 1308 (Miss. 1996); *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994).  Finally, if the contract is not ambiguous the Court can not write in terms not contemplated by the parties.  *Life & Cas. Ins. Co. v. Harvison*, 187 So.2d 847, 853 (Miss. 1966).

¶15.    A close look at the contract and language thereon at issue is appropriate.  The exclusion states: "Section II - Exclusions Personal Liability [coverage] does not apply to: c.  Bodily Injury To Any Insured - 'Bodily injury' to you or any 'insured' within the meaning of part a. or b. of "insured," as defined."  The term "insured" is clear and decisive.  The relevant portion of the Farm Bureau policy reads:

> "Insured" means *you* and *residents of your household* who are:
>     a.  *Your relatives*; or
>     b.  Other persons under the age of 21 and in the care of any person
>         named above.

(emphasis added).  The declarations and application page both list Shirley Walters *and* Cynthia Guy as named insureds.  Agent Kelvin Knotts told Guy that she had to be listed as an insured

because her name was on the title to the mobile home. Guy did not refuse and was added as a "Named Insured 2" upon Walters' policy. Guy then signed her name on the application which includes an acceptance of terms provision. However, Guy now argues that Farm Bureau's policy implicitly links the "insured" to the "insured location," and therefore Guy can *not* be an insured because she does not live on or reside at the Walters' residence premises. This argument is without merit because it is not uncommon to purchase insurance for a location which one does not live upon. Guy helped her mother purchase the mobile home and wanted to make sure her investment was protected. Moreover, Guy's admission that she wanted to protect her investment from fire and ensure that Jack Shoemaker did not get any of her mother's money or property suggests both her intent and expectation. Thus, we find that there is no debate that Cynthia Guy was an insured on the Walters/Guy policy.

¶16. We note that the "definitions" section of the contract specifically states: "you and your" refers to the named insured "shown in the Declaration and the spouse if a resident of the same household." Guy's spouse is covered by the policy and the household exclusion applies , thus, there was no duty to defend by Farm Bureau. This Court has held that a person not specifically appearing on the insurance policy, must fall within some type of inclusive language such as "your relatives" to be considered an "insured." *J&W Foods Corp.*, 723 So.2d at 551-52. Because Cynthia Guy is a "named insured" her spouse also falls within the broad category of "your relatives" outlined in the definition of "insured." *State Farm Mut. Auto. Ins. Co. v. McGee*, 759 So.2d 358, 359-60 (Miss. 1999) (Waller, J., specially concurring) (stating blood ties and living under the same roof as the named insured naturally makes the spouse an "insured" as well); 5 MISS. PRAC. ENCYCLOPEDIA OF MISS. LAW § 40:110 (2001) (noting that

8

protection extends to the named insured, their spouse, and residents of the same household of the named insured who are related).

¶17.    Cynthia Guy was a co-signing party with her mother Shirley Walters.    Cynthia became a "named insured" on the policy because her name appeared on the mobile home title.    The argument that William was not included as Cynthia's "spouse"on the insurance application does not negate the fact that William *was* Cynthia's spouse and that the definition section makes reference to "spouse" and also that he was a *relative* of Walters through his marriage to Walters' daughter.    The application of the term to William is clear and decisive.    However, this is *not* the intended result Guy wants because she wants "household" to be ambiguous *and* have William declared *not* insured.    Guy can not have it both ways.    Either the policy is clear and William is an "insured" or the policy is ambiguous and coverage is assumed via the rules of construction. We hold that William Guy is an "insured" because of his obvious spousal and relative relationship to the "named insured" Cynthia Guy.    Thus, the "household" exclusion applies, and personal liability coverage does not apply to William Guy.    We also hold the term "household" as used in this contract is not ambiguous.    The chancellor erred in not granting summary judgment to Farm Bureau.    We also find that the remaining issues are moot and need not be discussed.

## CONCLUSION

¶18.    For these reasons, we reverse the trial court's judgment and render judgment in favor of Farm Bureau.

¶19.    **REVERSED AND RENDERED.**

9

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**