**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-61091
Summary Calendar

GULFPORT-BRITTANY LLC; MEREDITH APRIL MATTHEWS

Plaintiffs - Appellants

v.

RSUI INDEMNITY COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:07-CV-1036

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

In this insurance case, Gulfport-Brittany, LLC, and Meredith April Matthews appeal from the district court's summary judgment in favor of defendant-appellee RSUI Indemnity Company ("RSUI"). We affirm.

**I**

Gulfport-Brittany and Matthews (collectively, "Gulfport-Brittany") co-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

owned the Brittany Apartments ("the Apartments") in Gulfport, Mississippi, when the Apartments were damaged by Hurricane Katrina on August 29, 2005. According to Appellants, they have incurred costs stemming from physical damage to the Apartments, loss of business income, and the necessity of complying with ordinances and/or laws associated with the demolition and reconstruction of the Apartments.

The property manager for the apartments, Heritage Properties, Inc., had obtained three commercial property insurance policies covering various properties, including the Apartments. Aspen Insurance UK Limited ("Aspen") provided the underlying policy with occurrence limits of $5 million, and Certain Underwriters of Lloyd's ("Lloyd's") issued the first layer of excess coverage, also with occurrence limits of $5 million. RSUI provided the final layer of excess coverage with policy limits of $140 million per occurrence. The RSUI policy also included a scheduled sub-limit of $2,458,014 for the Apartments. Heritage Properties filed claims with each insurer, and Aspen and Lloyd's both paid up to their $5 million limits. RSUI paid $2,458,014, but denied further liability. Gulfport-Brittany filed suit in the district court seeking a declaration that they were entitled to their costs up to $140 million under the policy generally as well up to $2.5 million under the Ordinance or Law coverage. RSUI counterclaimed for a declaration that it was not obligated to make any further payments. Gulfport-Brittany filed a motion for partial summary judgment, and RSUI filed a motion for summary judgment. The district court granted RSUI's motion and denied Gulfport-Brittany's, and Gulfport-Brittany timely appealed.

## II

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Chichakli v. Szubin*, 546 F.3d 315, 316 (5th Cir. 2008). Summary judgment is proper when "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). The facts and evidence must be taken in the light most favorable to the non-movant. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

Because this is a diversity case, we apply Mississippi substantive law. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). "The proper construction of an insurance contract provision is a question of law." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 717 (Miss. 2004).

### III

Gulfport-Brittany argues first that the RSUI policy is ambiguous and therefore must be construed in favor of the insured. *See Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004). In particular, Gulfport-Brittany maintains that the Excess Physical Damage Schedule ("Damage Schedule") and the Excess Physical Damage Coverage Form ("Coverage Form") found in the RSUI policy conflict with the Scheduled Limit of Liability endorsement. The Coverage Form states that "the limits of [RSUI's] liability shall be those set forth in Item 7 under the designation 'Limit Insured' and the Company shall be liable to pay the ultimate net loss up to the full amount of such 'Limit Insured.'" Item 7 of the Damage Schedule sets the "Limit Insured" at $140 million per occurrence.

The Scheduled Limit of Liability endorsement, on the other hand, states that:

1. In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":

    a. The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

    b. 100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or

    c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

Thus, Gulfport-Brittany argues, the policy is ambiguous because it is unclear whether the per occurrence limit for damage to the Apartments is $140 million or $2,458,014 (as stated in the latest Statement of Values). "Ambiguity however, [cannot] be forced into a policy where there is none." *Miss. Farm Bureau Mut. Ins. Co. v. Walters*, 908 So. 2d 765, 769 (Miss. 2005). The "Insuring Clause" in the Coverage Form states that RSUI's indemnification is "[s]ubject to the limitations, terms and conditions contained in this Policy or added hereto . . . ." This clearly includes the Scheduled Limit of Liability endorsement, and we agree with the district court that there is no conflict: the policy creates an overall $140 million per occurrence limit with scheduled sub-limits for individual properties, including the Apartments. *See id.* ("[T]he contract must be viewed as a whole. All parts must be harmonized as much as reasonably possible, and no part or word can be stricken unless the result is fairly inescapable." (citation omitted)). The policy is not ambiguous, and the district court did not err in holding that the scheduled limit applies.

4

Gulfport-Brittany also argues that RSUI owes additional payments as a result of its adoption, through the "Maintenance of Primary Insurance" clause found in the Coverage Form, of the Ordinance or Law endorsement contained in the primary Aspen policy, which provides $2.5 million in coverage. As the district court noted, however, the "Maintenance of Primary Insurance" clause states that:

> In respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy(ies) of the primary insurer(s) . . . .

Thus, while the RSUI policy is subject to most aspects of the Aspen policy (including the Ordinance or Law endorsement), it is expressly *not* subject to the "amount and limits of liability" in the Aspen policy. The scheduled limit in the RSUI policy therefore applies, and the district court did not err in so holding.

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.

5